J. A. KELLY v. E. L. FLEMING, JR., et al.

*Bill of Sale—Chattel Mortgage—Privy Examination of Wife—Description in Bill of Sale—Sale by Parent to Child—Effect of Attachment on Property Sold, but not Delivered—Instructions—Verdict of Jury.*

1. The statute (sec. 1 of ch. 91, Acts of 1891) provides that "wherever household or kitchen furniture is conveyed by chattel mortgage or otherwise as allowed by law in this State, the privy examination of married women shall be taken as is now prescribed by law in conveyance of real estate; provided that all such conveyances of household and kitchen furniture, except as herein provided, shall be ineffectual to convey a title to the same": *Held,* that the act does not apply to an absolute *sale* of such property, but only to a conveyance by chattel mortgage or other way by which a lien can be fixed thereon, as by deed of trust or conditional sale.

(*Quære:* Whether the provisions of the act could be made to apply in case of a chattel mortgage, etc., by a husband, of *his own* household and kitchen furniture, at any rate, of such as was owned by him before the passage of the act.)

2. An instrument of writing conveying all the household and kitchen furniture and all other property of every description belonging to the grantor at a certain house, is sufficiently definite where there is no difficulty as to the identification of the property by parol evidence.

3. A conveyance by a parent to a child is not presumptively fraudulent, except in case of a voluntary conveyance or one upon an insufficient consideration, the parent being in embarrassed circumstances.

4. Where there is no evidence to support a prayer for an instruction to the jury, it is not error to refuse to give it, although it contain a correct proposition of law.

5. A bill of sale absolute, and not intended as a security, is not invalid as to creditors of the grantor, although the delivery of the property conveyed by it is made after the levy of an attachment by such creditors.

6. In answer to an issue "Is F. the owner of the property described in the pleadings, or any part thereof? If so, what part"? the jury responded "Yes": *Held*, that the response was sufficiently intelligible, and properly understood to mean that F. was the owner of *all* the property.

CIVIL ACTION, tried at February Term, 1893, of VANCE Superior Court, before *Shuford, J.*, and a jury, upon appeal from Justice's Court by E. L. Fleming, Jr., and Fanny Fleming, interpleading defendants.

The plaintiff sued to recover a debt against defendant E. L. Fleming, Sr., who was a non-resident of the State, and caused an attachment to be levied on certain furniture, alleging the same to be the property of E. L. Fleming, Sr., and recovered judgment, from which E. L. Fleming, Sr., did not appeal.

At the trial of the cause before a Justice of the Peace, E. L. Fleming, Jr., filed an affidavit, asking to interplead, as appears on the record. The defendant E. L. Fleming, Jr., offered in evidence upon the trial, to support his title, a paper-writing, purporting to be a bill of sale, as follows:

"In consideration of $500 in cash to me paid by E. L. Fleming, Jr., I hereby bargain, sell, convey and deliver to E. L. Fleming, Jr., all the household and kitchen furniture and all other property of every description belonging to me, and at the house and lot in Henderson, N. C., owned by W. D. Horner, and occupied by my family.

"Witness my hand and seal, this 13th July, 1892.

                                        "E. L. FLEMING." [SEAL.]

The plaintiff objected to the introduction of the alleged bill of sale—

1. Because the privy examination of Fanny Fleming, wife of E. L. Fleming, Sr., was not taken, nor did she sign the said instrument as prescribed by law, and the same is therefore ineffectual to convey the title to the property.

2. Because the description of the property in the instrument is not sufficient, and the said paper is void for uncertainty.

The objection was overruled, and the plaintiff excepted.

Defendant E. L. Fleming, Jr., offered in evidence a check for $500, payable to and endorsed by his father, and admitted to have been paid by the bank on which it was drawn. Fleming, Jr., testified that he let his father have the money to accommodate him, as he, the father, was going to Texas. A few days afterwards his father said to him that he had no way to secure the advance of the $500, except by the furniture, and the son thereupon said he would take a bill of sale. Witness said, " I did not take possession of the property until after it was attached. When I drew the check it was not drawn in payment of the furniture. I let my father have the money to accommodate him, and did not have the furniture in mind. He afterwards let me have the furniture to secure me." Upon being recalled, witness said, " I did not give my father the $500 as the consideration for the furniture, but he gave me the furniture in consideration of the $500. I do not mean to say that the property was conveyed to me as a security, but that it was conveyed to me absolutely in settlement and payment of the $500, and was to be my property."

The property attached was in the house of W. D. Horner, and covered and included all the property owned by E. L. Fleming, Sr., there.

The plaintiff requested (in writing) his Honor to charge the jury as follows:

1. Conveyances from a parent to his child are, in law, presumptively fraudulent, although the child is twenty-one

years of age. And the transaction must be shown by E. L. Fleming, Jr., to have been in good faith, and without any fraudulent purpose.

2. If the jury are satisfied, from the evidence, that the transaction was a trick or contrivance to secure the continued use and benefit of the property to E. L. Fleming, Sr., or his family, and to prevent its seizure and application by law to the debts of E. L. Fleming, Sr., then it would be fraudulent, and the jury will answer the issue No.

3. That the paper writing, offered as a bill of sale, is inoperative, because the privy examination of Mrs. Fleming was not taken, and because no specific description of the property is given, and no evidence offered to show what property was referred to therein.

His Honor declined to instruct the jury as above set forth, stating that there was no evidence to support the second prayer, and plaintiff excepted.

Plaintiff also requested his Honor, in writing, to charge the jury—

"If the bill of sale was made, as alleged, on the 13th July, 1892, but there was no delivery of the property until after the levy of the attachment, then the same would be invalid as to creditors."

His Honor refused to give the instruction as requested, but charged the jury that the same would be true if the bill of sale was given as a security, but that it would not be true if bill of sale was intended as an absolute conveyance.

Plaintiff excepted, because his Honor declined to instruct the jury as requested.

The Court submitted the third issue to the jury, stating, among other things, that if the bill of sale was intended to secure the loan of the $500, then it is a mortgage, and, being unregistered, it is inoperative against creditors, and the jury should answer the third issue No. But if it was intended as a bill of sale absolute, and not as a mortgage, and if it was

a *bona fide* conveyance, the jury should answer the third issue Yes.

The Court further charged the jury that the burden was on the interpleader to prove title to the property claimed by him by a preponderance of the testimony.

The following issues were submitted to the jury, who answered the same as follows:

1. Is the defendant Fannie Fleming the owner of the parlor furniture described in the interpleader? Answer: No.

2. Are the said Fannie Fleming and E. L. Fleming, Jr., the joint owners of the piano described in the interpleader? Answer: No.

3. Is the said E. L. Fleming, Jr., the owner of the property described in the said interpleader, or any part thereof? If so, what part? Answer: Yes.

Plaintiff moved the Court to set aside the verdict on the third issue, and to grant a new trial, upon the ground that the verdict was not a proper response to the issue and was unintelligible, and no judgment could be rendered thereon.

The Court declined this motion, because it was of the opinion that the answer to said issue was intelligible and included all the property described in the bill of sale.

There was judgment for the interpleader, and plaintiff appealed.

*Messrs. A. C. Zollicoffer* and *Pittman & Shaw*, for plaintiff (appellant).

*Mr. T. T. Hicks*, for defendant.

MacRAE, J.: His Honor instructed the jury to respond to the first and second issues " No," and to this instruction and the finding of the jury in response thereto there was no exception. This eliminates from the case any question which might have arisen if a part of the property conveyed by the husband had been found to belong to the wife.

The first exception brings before us for construction the Act of 1891, ch. 91, entitled "An act regarding chattel mortgages."

"*Section 1.* That whenever household or kitchen furniture is conveyed by chattel mortgage or otherwise as allowed by law in this State, the privy examination of married women shall be taken as is now prescribed by law in conveyance of real estate; provided that all such conveyances of household and kitchen furniture, except as herein provided, shall be ineffectual to convey a title to the same."

The question presented is whether, upon a true construction of the statute above cited, it is necessary for the wife to join the husband in a conveyance and sale of *his* household and kitchen furniture, and be privily examined touching her free execution of said conveyance in order to make the same effectual in law. The act is not drawn with that precision and clearness which will enable us to reach without difficulty a conception of the will of the Legislature.

The words "household and kitchen furniture" may comprise not only that species of property which is in actual use, but also that which is on sale in shops, yet no one will contend that this statute should be construed so literally as to embrace articles of this kind of the latter class. The word "*convey*," in its broadest significance, might embrace any transmission of possession, but we are restrained to its legal meaning, which, ordinarily speaking, is the transfer of property from one person to another by means of a written instrument and other formalities. Rapalje & Lawrence Law Dict., " Convey, Conveyance." According to Webster a conveyance is "an instrument in writing by which property or the title to property is conveyed or transmitted from one person to another."

The meaning of this word being well understood at common law, it must be understood in the same sense when used in a statute. *Smithdeal* v. *Wilkerson*, 100 N. C., 52.

The statute refers to the manner of conveyence, *i. e.,* by chattel mortgage, and proceeds " or otherwise as allowed by law." It is a very familiar principle in the construction of statutes, that when there are general words following particular and specific words the former must be confined to things of the same kind. Southerland on Statutory Construction, § 268.

To aid us in reaching the meaning of the words of a statute we may, when necessary, now resort to the preamble, or even the caption or title of the act. Southerland, *supra,* § 210; *Randall* v. *R. R.,* 107 N. C., 748; *Blue* v. *McDuffie,* Bus. Law., 131. And this we find to be an act regarding chattel mortgages. The law as it was before the passage of this act permitted the wife to convey her real and personal property with the written assent of her husband (Constitution of North Carolina, Art. 10, § 6,), but as to her personal property no privy examination was necessary.

The evident mischief sought to be overcome by this act is the facility with which these necessary articles for the comfort and convenience of every household, however humble — the household and kitchen furniture—may be conveyed away, notwithstanding the protection which the law throws around them by the personal property exemption, at least during the life of the husband, by the chattel mortgage, or other lien, now almost the only basis of credit for the poor man.

The remedy proposed was to protect the wife, as in case of lands which were hers, or in which she had an inchoate interest, such as dower, from force or compulsion, by requiring her privy examination to be taken before the law would recognize the validity of such conveyance.

The act could not apply to those methods of conveyance of personal property by sale and delivery where no writing was used, for then the privy examination of the wife would have been impracticable. Nor to the sale by the husband of the personal property of which he was the sole owner,

because, in this instance it was not necessary that the wife should join. But it was intended to prevent the conveyance by chattel mortgage, or in any other way by which a lien could be fixed thereon, of the property named, as by deed of trust or conditional sale, without a writing signed by husband and wife, and the privy examination of the wife, as in sales of real estate; and this may be applicable to such property whether it belong to the husband or to the wife.

We do not think it was made to appear by the evidence, though the defendant so contends, that the property in controversy had belonged to the husband before the passage of this act; indeed, it will not affect our conclusion, as we have held the act not to apply to an absolute sale by the husband, such as is evidenced by the bill of sale offered in evidence.

In case of a chattel mortgage or other like conveyance of his own household and kitchen furniture by the husband, the serious question would arise as to whether the provisions of the act could be made to apply—how far the Legislature may restrain the *jus disponendi* of private property, where no rights of others are to be preserved, or whether it may do so at all. *Bruce* v. *Strickland*, 81 N. C., 267; *Hughes* v. *Hodges*, 102 N. C., 236; or at any rate, whether it might be made to apply to such property as was owned by the husband before the passage of the act in question. *Sutton* v. *Askew*, 66 N. C., 172.

We see no force in the exception that the description of the property in the instrument is not sufficient. It was intended to and did cover all of the personal property of the grantor, which was then in the house or upon the lot described. There was no difficulty as to the identification thereof, which might be done by parol. *Goff* v. *Pope*, 83 N. C., 123.

The plaintiff excepted to the refusal of his Honor to instruct the jury that " conveyances from a parent to a child are in law presumptively fraudulent, although the child is twenty-one years of age. And the transaction must be shown

by E. L. Fleming, Jr., to have been in good faith and without any fraudulent purpose." We think that this prayer was too broad and sweeping in its terms, and that the instruction could not have been given. It was said in *Jenkins* v. *Peace*, 1 Jones (46 N. C.), 413: "Nor is a parent forbidden to sell to his child. The only difference would be that the latter would be held to fuller and stricter proof of the fairness of the transaction." .

In case of a voluntary conveyance or one upon insufficient consideration by parent to child, the parent being in embarrassed circumstances, such presumption would arise. The evidence in this case would not have warranted the instruction. *McCanless* v. *Flinchum*, 89 N. C., 373.

The second prayer for instruction was a correct proposition of law, but there was no evidence to support it. The evidence, if believed, was all to the contrary.

We have already disposed of the third prayer and exception, and we agree with his Honor in his refusal to instruct the jury: "If the bill of sale was made, as alleged, on the 13th of July, 1892, but there was no delivery of the property until after the levy of the attachment, then the same would be invalid as to creditors." 1 Benjamin on Sales, § 330.

We think that the response to the third issue was properly understood by his Honor. If the jury had found the interpleader to be the owner of part only of the property, it would have been necessary to qualify the answer, but its only meaning must be that he was the owner of it all. There is

No Error.