ANDREW J. BATES v. MORRIS H. SULTAN AND M. E. SULTAN.

*Married Woman, Contracts of—Charge on Separate Estate—Guarantee of Wife's Debt by Husband Equivalent to Consent—Action to Subject Land to Charge—Requisites of.*

1. A married woman cannot charge her separate real estate with her debt except by deed accompanied by privy examination.

2. In an action to subject the separate estate of a married woman to the payment of a debt with which she is alleged to have charged it with the written consent of her husband, it is not necessary that the complaint shall charge that the debt was contracted upon any of the considerations specifically mentioned in section 1826 of *The Code* or that the wife was a free trader, but only that she did so charge it.

BATES *v.* SULTAN.

3. A married woman being engaged in business (not a free trader) made a "statement" of her affairs, to a dealer from whom she was about to purchase and did purchase goods, said statement being declared to be for the purpose of establishing her credit and as a basis therefor and containing an agreement, in consideration of credit given her, to advise the dealer of any material change in her affairs, and several days thereafter her husband executed a paper writing guaranteeing the payment to the dealer of any indebtedness of his wife, contracted before or after the date of the paper writing; *Held,* (1) that the "statement" made by the wife was sufficient to establish the agreement to charge her separate estate and evidenced her intent to do so as clearly as if she had written, "if you will credit me for goods that I buy of you I will pay you out of the property mentioned in the schedule I have given you and your debt shall be a charge upon it;" (2) that the paper writing executed by the husband was a sufficient consent to her charging her separate estate for the payment of her debt to the dealer. (FURCHES, J., dissents *arguendo,* in which FAIRCLOTH, Chief Justice, concurs.)

4. While an action to subject the separate estate of a married woman to the payment of a debt alleged to be a charge upon it, is in the nature of a proceeding *in rem,* yet, as her agreement created no lien upon such estate, it is not necessary for the complaint to allege that the separate estate sought to be subjected is the same as that of which she was possessed at the time of the agreement to charge it or that it is such as was obtained by exchange for or bought with the proceeds of the sale of, or with the income from the estate owned by her at the time of such agreement.

5. In such cases, it is only necessary to show that the property mentioned in the complaint and sought to be subjected was owned by the *feme covert* at the date of the commencement of the action, and, in case of judgment, it and the execution should particularize the separate property admitted or proved on the trial to have been owned by her at the commencement of the action.

CIVIL ACTION, begun in March, 1894, in the Superior Court of CRAVEN County, by the plaintiff against the defendants to recover the sum of $1,052.60, and to have the judgment declared a charge upon the separate estate of the *feme*

defendant, and heard on demurrer before *Bryan, J.*, at May special term, 1895, of said court. His Honor sustained the demurrer and plaintiff appealed. The facts and the grounds of demurrer appear in the opinion of Associate Justice MONTGOMERY.

*Mr. D. L. Ward,* for plaintiffs (appellants).
*Mr. W. W. Clark,* for defendants.

MONTGOMERY, J.: The *feme covert* defendant, M. E. Sultan, not a free trader, was engaged in merchandise in New Berne, her husband, the other defendant, the while managing the business for her. She, through her husband, on January 30th, 1892, at New Berne, executed and delivered to the plaintiff a writing containing her financial condition, assets and liabilities, the assets consisting of real and personal property, in value about twenty-five thousand dollars; her liabilites being only about thirteen hundred dollars. The yearly extent of her business she stated to be twenty-three thousand dollars. This schedule was prefaced with a statement and caption, all forming one entire instrument and made a part of complaint, as exhibit "A," as follows:

"Statement as a Basis for Credit: Statement to A. J. Bates & Co., of the financial condition of M. E. Sultan, of New Berne, County of Craven, State of North Carolina.

"For the purpose of establishing my (or our) credit with A. J. Bates & Co., and a basis therefor I (or we) make the following statement as to my (or our) means which shall apply to all future purchases, unless revoked by me (or us) in writing and delivered to them personally; also, in consideration of such credit I (or we) agree to advise A. J. Bates & Co., immediately of any material change in my (or our) affairs."

Afterwards on the 11th of February, 1892, the defendant husband executed and delivered to the plaintiffs a paper writing made a part of complaint, as exhibit "B," as follows :

"For and in consideration of One Dollar to me (or us) in hand paid by A. J. Bates & Co., (the receipt whereof is hereby acknowledged,) I (or we) do hereby guarantee unto them unconditionally the payment, at all times after maturity, of any indebtedness (not exceeding the sum of one thousand and five hundred dollars,) of Mrs. M. E. Sultan now doing business in New Berne, county of Craven, and State of North Carolina, of any purchase or other liability made prior to, or to be made after this date, by the said Mrs. M. E. Sultan of the said A. J. Bates & Co., upon a credit of sixty days, or such other time, or at any extension of time after maturity, as may be given by the said A. J. Bates & Co., to the said Mrs. M. E. Sultan.

"And I (or we) hereby waive all demands of payment and notice of protest as the respective bills, notes, acceptances, or other indebtedness of the said Mrs. M. E. Sultan fall due.

"This guarantee to be an open and continuous one at all times, to the amount of one thousand and five hundred dollars above named, until revoked by me (or us) in writing."

After the execution and delivery of the two papers the plaintiff sold and delivered to the *feme* defendant in New Berne more than a thousand dollars worth of goods and wares for which she refused to pay when demand was made upon her.   This action was brought to subject the statutory separate estate of the *feme* defendant to the payment of the debt, the complaint containing allegations that the *feme* defendant is in possession of a large separate estate real and personal, that she intended to charge her separate

117—7

estate with the debt, that the consideration of the debt was for the benefit of her sole and separate estate and that her husband gave his consent in writing to her agreement to buy the goods and to charge her separate estate with the amount. The *feme* defendant demurred to the complaint assigning numerous grounds under two heads which will be particularized in the discussion of them.

This Court decided in the case of *Farthing* v. *Shields*, 106 N. C., 289, that the lands of a married woman cannot be charged by any undertaking on her part in the nature of a contract unless it be evidenced by deed accompanied by privy examination. In that case, however, it is stated that liens created by statute, Chapter 41 of *The Code*, are not affected by the decision. We can, therefore, in the case before us dismiss from consideration the attempt of the plaintiffs to charge the real estate of the *feme* defendant, for it appears from·the complaint that the paper writing which is relied on to create a charge on her separate estate was not executed by deed with privy examination.

The first division of the demurrer is in the following language: 1. "It is not alleged that said debt was due for her necessary personal expenses or for the support of her family or such as was necessary in order to pay her debts existing before marriage, or that the same was contracted with the written consent of her husband, or that she was a free-trader."

It was not necessary for the plaintiffs to allege in their complaint that the debt due was for any of the considerations specifically mentioned in Section 1826 of *The Code*, or that the *feme* defendant was a free trader. The cause of action was on account of none of these, but its object was to have subjected her separate estate to the payment of a debt with which she was alleged to have charged it, with the written consent of her husband. The instru-

ment executed by her and called "Statements as a basis for credit" heretofore referred to is what the plaintiff relies on to prove her agreement to charge her separate estate. We are of the opinion that it is sufficient. It appears from it, taken with the paper executed by her husband, that she meant to act under the powers given her by the statute (1826 of *The Code*), and the intention to charge her separate estate is apparent. We think when she made the statement and declared in it that "for the purpose of establishing my credit and as a basis therefor, I make the following statement which shall apply to all future purchases............and in consideration of such credit I agree to advise (plaintiffs) immediately of any material change in my affairs," that her intent to charge her separate estate was as clear as if she had written "if you will credit me for goods that I buy of you, I will pay you out of the property mentioned in the schedule I have given you, and your debt shall be a charge upon it." The property named in the instrument, not the statement containing the description and amount, was the basis—the foundation—upon which the credit was extended and the goods were sold. We are of the opinion also that the paper writing executed by the defendant husband, while it may be a guarantee in case of the wife's default, is also a sufficient consent to her charging her separate estate for the payment of her debt to the plaintiffs. Consent is embraced in the idea of guarantee. The promise that he will make good his wife's agreement, pay her obligations if she does not, can carry with it no other idea than that he desires and expects her to pay out of her own property her debts, and not cause loss to him as her guarantor for her failure.

The second division of the demurrer is as follows : "It does not allege that the separate estate which this defendant now has is a part of the separate estate which she had

BATES *v.* SULTAN.

at the time the said debt was contracted or that said estate had been substituted for the separate estate which she had at the time that the debt was contracted, or that the same had been purchased with the income or proceeds of said separate estate which she had at the time the debt was contracted, or that the same had been received in exchange for the separate estate which this defendant had at the time the debt was contracted." It cannot be sustained in this Court. Whilst an action to subject the property of a married woman to the payment of such of her executory agreements as she is allowed to make under our laws is in the nature of a proceeding *in rem*, yet the creditor gets no lien at the time of the agreement upon the estate of the married woman. She can sell or dispose of her property at any time and give the purchaser for value a good title, and the creditor will be allowed to have his judgment satisfied out of any of her separate estate, whether it be that of which she was possessed at the time of the making of the agreement to charge it, or whether it be such as she may have exchanged it for, or have acquired in any way whatever. If it be denied, however, the plaintiff must prove on the trial that the *feme* defendant had, when the suit was commenced, whatever of the property mentioned in the complaint he wishes to have subjected to the payment of his debt; and the judgment and the execution issued on it should set forth with particularity the separate property, personal (not real) which the defendant admitted she had or which the plaintiff proved that she had at the time of the commencement of the action. If the officer to whom the execution is issued, when he comes to levy upon the separate estate of the *feme* defendant, finds none of it which is described in the execution, or not enough to satisfy it, he will in the latter instance sell what he finds, and in both

make proper return of his writ. The creditor then will have such remedy by supplemental proceedings or otherwise as he may be entitled to, to reach such property as she may have fraudulently disposed of, or such as has been substituted for such as she had, or such as has been purchased with the income or proceeds of such as she had, or such as she has received in exchange for such as she had, or the proceeds of sale of such as she had disposed of; all subject to her personal property exemption allowed by law. There was error in his Honor's sustaining the demurrer. It should have been overruled. .

Error.

FURCHES, J. (dissenting): Without entering at length into a discussion of the case, I will state a few of the reasons that prevent me from agreeing to the judgment of the Court. It is true that this appeal comes up upon complaint and demurrer and therefore we can only consider the sufficiency of the complaint. But the complaint makes exhibits "A" and "B" a part of the complaint. These exhibits enable us to see the case, as I think, in its true light; and as they are a part of the complaint, they are proper subjects of consideration and review in this appeal.

The defendant M. E. Sultan is a married woman; and as it is her property which has to pay the plaintiffs' demand, if it is paid, it is necessary to make a case against her. This the plaintiffs try to do by exhibits "A" and "B", under the Constitution and Section 1826 of *The Code*. Before the Constitution of 1868 a married woman could make no such contract as this. But upon her marriage all her personal property became the property of her husband. He might spend it or do as he pleased with it. And it has always been my understanding that Section 6 of Article X was put in the Constitution for her protection. . It was

intended to secure her in the enjoyment of her own property, and to take it out of the control of (it may be) a worthless husband. Section 1·26 of *The Code*, in affirmance of the common law, provides that she shall be incapable to make any contract which will bind her real or personal property, except for necessaries, personal expenses or for the support of her family, or such as may be necessary to pay her debts existing at the time of her marriage, "without the written consent of her husband," unless she is a free trader *as hereinafter provided*. Plaintiff contends that exhibit A and B show a compliance with that clause of section 1826 which allows her to make a contract with the written consent of her husband. In this I do not concur.

For a long time the profession thought that the husband should not only sign the contract with the wife, but he must give his *express consent*. But in *Jones* v. *Craigmiles*, 114 N. C., 613, it is said, if he signs the contract with his wife, it will be presumed he gave his consent. This is the furthest our Court has yet gone. But this case, in my opinion, goes a bow-shot beyond that. Here, we have a husband doing a mercantile business which he says amounts to $23,000 a year, without means of his own, upon the credit of his wife. And on the 30*th day of January*, 1892, he makes up a statement of his wife's property and signs her name to it—Exhibit "A;" and on the 11*th day of February*, 1892, he makes a guarantee (calls it that) guaranteeing for all time to come, if not revoked "by me or us," "my or our" indebtedness, to the amount of $1,500, that has been made or may hereafter be made. Plaintiff then sells defendants goods and charges them to the wife to the amount of $1,052.60, and contends that under exhibits "A" and "B" this is the contract of the wife with the written consent of the husband. Exhibit "A" is no contract. It is a statement made by the husband as a basis of credit.

Exhibit "B" is not the contract of the wife. She does not sign it and is no party to it. It is a guarantee of the husband that, if his wife does not pay the plaintiff, he will.

It seems to me that it is an attempt on the part of the husband to make his wife a free-trader without complying with the law (*Code*, Sec. 1827), and then to constitute himself her agent, and spend her estate. I do not think that Exhibits A and B are a compliance with Section 1826; that it would be dangerous for this Court to sanction such a method as this, of turning over the estates of married women to be squandered by worthless husbands. I cannot agree to it.

FAIRCLOTH, C. J.: I concur in the above dissenting opinion.