CAUSEY v. SNOW.

*Action on Note—Issues—Practice—Evidence—Presumption—
Married Woman—Assent of Husband to Wife's Contract.*

1. Where an action in the nature of a creditor's bill proceeded to final decree and a note which had been executed to a commissioner appointed in the cause was, by the decree, turned over to one of the parties to the suit, the remedy of the owner was by action thereon and not by motion in the cause.

2. In an action on a note, an issue involving the enquiry whether defendants were indebted to plaintiff and, if so, in what amount, was sufficient to enable defendants to have the question of plaintiff's ownership of the note passed on by the jury.

3. Where, in an action on a note, the defendant admits its execution and the plaintiff produces it on the trial, the presumption raised by the law that the plaintiff is the rightful owner is not rebutted by the defendant's denial of such ownership in the answer.

4. The contract of a married woman, made against her interest, and for which she receives no valuable consideration, is invalid without her husband's consent.

CIVIL ACTION, to recover on a note, tried before *McIver*, J., and a jury, at July, 1896, Special Term of GUILFORD Superior Court.

. The decree referred to in the opinion and by the terms of which the note sued on was given was rendered in a cause entitled *N. L. Cousey, for herself and all other creditors, &c.* v. *The Willow Brook Manufacturing Company,* and was as follows:

"This being an action to enjoin the sale of property under executions upon docketed judgments against the Willow Brook Manufacturing Company, and praying a sale of all of the property of said company by decree of court and the ascertainment of the liens on the property and the applications of the proceeds of sale by the court according to the priority of liens and the rights of all the parties, and the case being duly constituted in court by service of summons and publication, the same is now set down for hearing, and now by consent of parties and the admitted and undenied facts in the pleadings, the parties submit and bring the case on for judgment upon the following undisputed facts, to-wit:

"1. The High Point Manufacturing Company was the owner of a factory and fixtures on a lot in High Point of one acre and one hundred poles, and in the course of its business it executed a mortgage to secure $15,000.00 of bonds issued by the corporation, each bond being for the sum of one thousand dollars, all of which said bonds became the property of the Wachovia Bank, of Winston.

"2. That said High Point Manufacturing Company, on 8th November, 1882, sold and conveyed all its property to the Willow Brook Manufacturing Company, and at the same time the said Willow Brook Conpany acquired by purchase of and from O. S. Causey five lots of land adjacent to the said property of the High Point Manufacturing Company, and for said five lots agreed to pay eight thousand and five hundred dollars ($8,500.00) whereby the said Willow Brook Company acquired said property, subject to the mortgage to secure the $15,000 aforesaid, and charged with the said purchase money of the five lots purchased of O. S. Causey.

"3. That the Willow Brook Company had on the premises affixed to the freehold an engine and boiler purchased of W. A. Harris at $3,400 reduced by payment thereon down to $2,600, with a written reservation of title until full payment, which was before the law was passed requiring such reservation to be registered.

"4. That the Mutual Machine Works, of Philadelphia, sold and delivered thirty looms to the Willow Brook Company, which came to hand and were put into position and fastened down to the floor, and some two months thereafter the said Willow Brook Company executed a written reservation of title to said Mutual Machine Works, and same was not registered as required by the Statute in force at the time of the execution thereof until within sixty days next before the institution of this suit—cost price $2,300.00.

"5. During the course of its business the Willow Brook Company became indebted to the Wachovia National Bank in the sum of $8,500.00; for that debt the company confessed a judgment on 27th September, 1884, in favor of said bank, which judgment was void for defects in the affidavit on which it was founded.

"6. That the Willow Brook Company also became largely indebted to the First National Bank, of Winston, and on 20th March, 1884, confessed judgment in favor of that bank for $18,096.50 and cost, which said judgment as well as the one last aforesaid were docketed in the Superior Court Clerk's office of Guilford.

"7. That besides these debts reduced to judgments, the other creditors made defendants, subsequently to said two in favor of the bank also obtained judgments, and had them docketed in the Superior Court of Guilford before the registration of the reservation of title by the Mutual Machine Works was ever registered, to-wit: Four judgments in favor of Brown Bros., one for $73.76 and costs, one for $83.54 and costs, one for $194.24 and costs and one for $70.59 and costs. Two in favor of Henry Gould, one for $240.25 and costs, and one for $240.25 and costs, the aids Brown Bros. being docketed 17th February, 1885, and the two in favor of Henry Gould docketed on 2nd March, 1885, and besides these there are judgments as follows: One in favor of Guesenheimer & Co., for $693.94 and

120—36

costs, docketed 31st August, 1885, one in favor of J. L. Lindsay .for $159.65 and costs, for A. Hoen & Co. for $66.34 and costs, one in favor of John Snedecker for $34.00 and costs, the last three docketed 18th March, 1885.

"8. That bsides these debts reduced to judgments as aforesaid, the said Willow Brook Company was indebted to the plaintiff in $8,500, the purchase money of the five lots sold to the company by O. S. Causey, and the further sum of $15,000 by virtue of the notes of the company in payment.of moneys due her as her separate estate.

"9. That the Willow Brook Company, in the course of its business, effected insurance on the factory, fixtures, &c., and the same was consumed by fire on the 4th of July, 1884, and the moneys realized from the policies went as appropriated in the policies, to the judgment in favor of the First National Bank, of Winston, leaving a balance then of $3,750, and the coupon bonds held by the Wachovia Bank were paid off except $3,000, the sum of $8,600 was paid plaintiff on the note given for the five lots, conveyed to the company by O. S. Causey and the residue paid to plaintiff in part of her debt of $15,000 aforesaid.

"10. That the Wachovia Bank, on the judgments aforesaid, confessed to it, caused execution to be issued and sold all the right, title and interest of the Willow Brook Manufacturing Company in the lands purchased of the High Point Manufacturing Company and the five lots adjacent purchased of O. S. Causey, and all the machinery and fixtures, including the looms bought of the Mutual Machine Works, and the engine and boiler bought of W. A. Harris, the sale being a sale of the equity of redemption in all the realty except the five adjacent lots, and subject to prior liens thereon to. secure the coupon bonds aforesaid and to the said confessed judgment in favor of the First National Bank, of Winston.

"That at the sale the plaintiff purchased all of the said property, and paid her money for it, and took a Sheriff's, deed therefor, the sale being under the said Wachovia Bank execution, in good faith, believing that the sale was all regular and fair and the title valid and good, and so believing she went on and paid $3,000 to the Wachovia Bank in order to relieve the property of a balance due on the mortgage given to secure the $15,000 of coupon bonds,

paid the First National Bank, of Winston, $3,750 not paid by insurance policy, and paid and took assignment of balance due W. A. Harris for engine and boiler, the title to which was reserved, and she has since bought and had transferred the claims of the Mutual Machine Works of $2,300 to herself and owns the same now.

"That in the course of this suit, by consent of parties, the whole property, including looms bought of the Mutual Machine Works, was sold by R. R. King and John A. Barringer as receivers, and the sales confirmed, and from their report filed, after deducting the expenses of sale and all costs, there appears to be a net sum of $————— in hand and subject to application by this court.

"Upon the foregoing facts it is adjudged by the court that the plaintiff has the right of subrogation to the lien of the Wachovia Bank as bondholder for $3,000 paid by her to relieve the property of the mortgage thereon and its interest since paid by plaintiff, also to lien of the judgment of the First National Bank, of Winston, for $3,750 paid by plaintiff to relieve her purchase from the lien of the judgment and interest on that sum, and also hath the right to have $2,600 secured by a reserved title to engine and boiler purchased of W. A. Harris and assigned to her, making in the aggregate $9,350 principal money, and the court adjudges that said three sums have priority over all other creditors.

"11. That the looms bought of the Mutual Machine Works became and were a fixture, being a part of the freehold, and as such came under the lien of the mortgage given to secure the coupon bonds under the lien of the judgment in favor of the First National Bank; and the net sum in hands of the receivers from all sources, including said looms, not being sufficient to pay said liens, without regard to the reservation of title on the engine and boiler, it is adjudged by the court that there is no need to go further and pass any judgment as between the other creditors by subsequent judgments, and those without judgments, and thereupon it is adjudged by the court that the receivers, R. R. King and John A. Barringer, pay the costs, to be taxed, of this cause, and the residue they shall pay over to plaintiff and take her receipt therefor.'"

On the trial the defendants, other than O. S. Causey, tendered an issue as to the ownership of the note sued on. His Honor declined to submit such an issue and submitted one as to whether defendants were indebted to plaintiff, and, if so, in what amount. There was a verdict followed by judgment for the plaintiff and the defendants appealed.

*Messrs. L. M. Scott* and *J. A. Barringer*, for plaintiff.
*Messrs. Dillard & King* and *J. T. Morehead*, for defendants (appellants).

MONTGOMERY, J.: There was a motion made in the court below to dismiss the action on the ground that the note sued on showed on its face that it was executed to com missioners named in a certain action in the nature of a creditor's bill, in the same court in which the present action is pending, in which the plaintiff here was one of the plaintiffs there, and the Willow Brook Manufacturing Company and others were defendants, and that therefore proceedings to recover on the note should have been commenced by a motion in that cause. His Honor committed no error in overruling 'the motion. The decree in the creditor's bill was a final one. The receivers had performed all the duties required of them and they were ordered in the decree to pay over to the plaintiff the funds in their hands after first paying out of the same the entire costs of the proceedings. The defendants' second exception was to the refusal of his Honor to submit an issue as to the ownership of the note sued on. The court submitted an issue as to whether the defendants were indebted to the plaintiff, and, if so, in what amount, and we are of the opinion that that issue was sufficient for the purpose of enabling the defendants to have the question of the plaintiff's ownership of the note passed upon by the jury.

It would have been an easy matter for his Honor to have instructed the jury that, if they found from the evidence that the plaintiff was not the owner of the note, then they should find for their verdict that nothing was due to her; and the jury would have had no trouble in understanding the matter committed to them.

After the testimony was all in the court charged the jury that if they believed the testimony they should find the issue submitted in favor of the plaintiff. The defendant, in his answer, admitted that he had executed the note for money lent to him and that he had not paid any part of it. He, however, denied that the plaintiff was the owner of the note, but he introduced no sufficient testimony tending to make good the averment.

The plaintiff having produced the note on the trial, and the defendant having admitted its execution, the law raised the presumption that the plaintiff was the rightful owner. And this presumption was not rebutted by the defendant's denial in his answer. *Pate* v. *Brown*, 85 N. C., 166; *Jackson* v. *Love*, 82 N. C., 405.

The defendant also set up in his answer the defence that although he executed the note to the commissioners for money lent to him by them by order of the court during the pendency of the creditor's bill, he yet had an understanding with the plaintiff at that time that he would not be compelled to pay the note in the event that her claim should be adjudged of prior dignity over the other creditors; and that she did recover in the said creditors' bill all she claimed. The defendant avers that the consideration upon which the plaintiff's promise was based was that he should not become one of the parties to the creditors' bill, as a stockholder, for the purpose of contesting her right of priority over the other creditors. Upon an inspection of the final decree in the creditors' bill it is plainly to be seen

that the promise of the plaintiff, if made by her, was against her interest; that she had never received anything of value from the defendants, and that her claims against the defendants in the creditors' bill were in law paramount to those of any stockholder. The plaintiff was a married woman at the time of the alleged agreement with the defendant, and could not make such a contract without the assent of her husband, and that she did not have. There was no error.

Affirmed.