GERMAN LOOKING GLASS PLATE CO. *et al.* v. THE ASHE-
VILLE FURNITURE AND LUMBER CO.; FIRST
NATIONAL BANK OF SPRINGFIELD, OHIO;
THE MAD RIVER NATIONAL BANK,
OHIO, *et al.*

(Decided June 7, 1900.)

*Creditor's   Bill—Injunction—Receiver—Attachment—For-
eign Judgment—Irregularity.*

1. The Ohio banks, creditors of the Asheville Furniture and Lumber
   Company, recovered judgments upon their claims in the Court
   of Common Pleas of Clark County, Ohio, and afterwards
   brought suit in the Superior Court of Buncombe County, N. C.,
   upon their judgments, together with attachments levied upon
   the property of their debtor and recovered judgments in the
   Superior Court upon their Ohio judgments, and also in the
   attachments:  *Held*, that the North Carolina judgments were
   valid, and unaffected by any alleged irregularity in the Ohio
   judgments which were used in evidence, and that the attach-
   ment liens related back to the levy.
2. The fact that the plaintiffs were also creditors of the Asheville
   Furniture and Lumber Co., did not entitle them to an order
   for injunction and receiver against the Ohio banks, who by
   their diligence had established their claims and seized the
   property of their debtor.

CREDITOR'S BILL pending in BUNCOMBE Superior Court,
heard before *Starbuck, J.,* at Chambers, June 29, 1899, upon
an application to continue until final hearing an injunction
order previously granted, and for the appointment of a
receiver of the property of the defendant Asheville Furniture
and Lumber Co. The Ohio banks, defendants, were also
creditors of the Furniture and Lumber Co., had reduced their
claims to judgments in the Court of Common Pleas of Clark
County, Ohio, and afterwards sued upon them in Buncombe

Superior Court, and attached the property of their debtor, and recovered judgments in both the suits and attachments, using the Ohio judgments as evidence.

The application for injunctive relief set up in the creditor's bill, was that the Ohio judgments were irregularly obtained. His Honor ordered the injunction, and appointed a receiver. The Ohio banks, defendants, excepted, and appealed.

Branches of this Furniture and Lumber Co. case, have been heretofore before the Supreme Court, and reported: 116 N. C., 827; 120 N. C., 475; 122 N. C., 752.

*Messrs. Chas. A. Moore,* and *F. A. Sondley,* for appellants.
*Messrs. T. H. Cobb,* and *W. W. Jones,* for appellees.

FURCHES, J.   After examining a record of over three hundred pages of printed matter we hope we sufficiently understand the facts of this case to decide the questions of law presented by the appeal.

It seems that plaintiffs and the defendants, The First National Bank of Springfield, Ohio, and The Mad River National Bank, were creditors of The Asheville Furniture and Lumber Company.   The plaintiff and the defendants, The First National Bank of Springfield, and the Mad River National Bank, all brought suits in the Superior Court of Buncombe County upon their respective claims.

The Ohio banks commenced their action on the 24th of November, 1891, on which day they sued out attachments, which were levied on property of The Asheville Furniture and Lumber Company, and at December term of said court The First National Bank of Springfield, Ohio, recovered judgment against The Asheville Furniture and Lumber Company for $20,726.40, and the Mad River National Bank recovered judgment against The Asheville Furniture and Lumber Co.,

for $7,053.60. And afterwards, these two actions, by consent
of all parties, were consolidated, and at August Term, 1895,
of said court, these parties, in this consolidated action, re-
covered judgment upon their attachment proceedings, con-
demning the property so attached and against The Battery
Park Bank, The Western Carolina Bank and The National
Bank of Asheville, into whose hands the attached property
had gone, and who had intervened in the attachment pro-
ceedings, for the sum of $11,000, as the value of the property
attached, and $2,488 as damages for the detention, etc., of
said attached property. That at March Term, 1892, of said
court, The East Tennessee National Bank recovered a judg-
ment against The Asheville Furniture and Lumber Company
for $5,104.12, upon which it seems an attachment was levied
on property of The Asheville Furniture and Lumber Com-
pany in Swain County. That on the 15th of August, 1895,
the German Glass Plate Company and the Atlanta Paper
Company commenced this action as a creditor's bill. In this
action plaintiffs asked for an injunction against the Ohio
banks enjoining them from receiving the money recovered on
their attachments, and against The Battery Park Bank, The
Western Carolina Bank and the National Bank of Asheville
from paying said money to the Ohio banks. And on the
15th of September, 1898, the injunction was granted, and a
receiver appointed, from which order the Ohio banks ap-
pealed.

The Ohio banks held notes against The Asheville Furni-
ture and Lumber Company, a North Carolina corporation, a
part of whose directors lived in Ohio, where it seems to have
had an office and place of business, and where some of the
endorsers on said notes resided; and it seems that these
Ohio banks had sued on these notes in the State of Ohio, and
had recovered judgments there against The Asheville Furni-

ture and Lumber Company, as well as against the endorsers. That they had sent transcripts of these judgments here, which were used as evidence in the action of the Ohio banks in their actions and attachments in Buncombe Superior Court, in which they recovered their judgments against The Asheville Furniture and Lumber Company, and the intervening defendants therein.

There is no suggestion but what the notes given to the Ohio banks were genuine, and that The Asheville Furniture and Lumber Company owed these banks the debts for which said notes were given. But it is contended by The German Looking Glass Plate Company, and the other plaintiffs in this action that there was an irregularity in the proceedings in Ohio by which the Ohio banks procured said judgments in the Ohio court; and the greater part of the arguments in this Court were directed to a discussion of that question. It may be that there was such irregularity as that contended for, but we do not say that there was, as it does not become necessary for us to pass upon that question, as we do not think it material to the determination of the case on appeal.

The rights of the Ohio banks do not depend upon the regularity by which the Ohio judgments were obtained, but upon the judgments which these banks recovered against The Asheville Furniture and Lumber Company in the Superior Court of Buncombe County, and the judgment of said banks (in the consolidated action) recovered against the intervenors, in the attachment proceedings. These are regular, are still in force and unsatisfied. The Ohio banks would have had a right of action against The Asheville Furniture and Lumber Company, on their debts, and upon their notes; and the Ohio judgments were only used as evidences of indebtedness in the actions of the Ohio banks against The Asheville Furniture and Lumber Company in the action in the Superior

Court of Buncombe. And the fact that evidence may have been offered on the trial of that action that would have been excluded (if such was the case) can not make said judgments irregular and void. Indeed, we do not understand that this is contended by the plaintiffs in this action. It was said that some of the parties interested in the Ohio debts—judgments—were stockholders and directors in the corporation, The Asheville Furniture and Lumber Company; but if this were true it did not prevent them from dealing with the Asheville company, nor did it prevent the Ohio banks, in which they were interested, from dealing with The Asheville Furniture and Lumber Company. *Langston v. Improvement Co.,* 120 N. C., 132.

Then the judgments of the Ohio banks being regular North Carolina judgments still in force and unsatisfied, and the attachments sued out by these banks being regular (based upon an allegation of fraud), and levied on the property from which the judgment against the intervenors was rendered, the question depends upon the rights the Ohio banks acquired by reason of said attachments—the attachment liens.

The fact that The Asheville Furniture and Lumber Company owed the plaintiffs, gave them no lien on its property; and although the plaintiffs have commenced what they claim to be a creditor's bill, and appeal to the equitable jurisdiction of the court, can not avail them anything as against the Ohio banks, if these banks have acquired a legal right—a priority to this fund, over the other creditors of The Asheville Furniture and Lumber Company. So if the attachments gave the Ohio banks the legal right to this fund—a special lien—a judicial appropriation—they are still entitled to have it. Equity always recognizes the legal rights of parties, and never displaces them. This is the question—the crucial point in this case—and it seems to be settled against the plain-

tiffs, The German Looking Glass Plate Company, and the other plaintiffs in this action. By the levy of the attachments, the Ohio banks acquired a lien on the property from which this fund was derived, which lien commenced at the date of their levy on the 24th of November, 1891. *McMillen v. Parsons,* 52 N. C., 163; 3 Am. and Eng. Enc. of Law (2d Ed.), 220.

There was error in the judgment appealed from in granting the injunction, and it is reversed. But if it be deemed necessary to have a receiver as to other property and effects not embraced in the judgment of the Ohio banks upon the attachments, that part of the order appealed from may be allowed to stand. The defendant, the Ohio bank, will recover the costs of this appeal, including the cost of printing the whole record.

Error. Reversed.