## VANN v. EDWARDS.

### (Filed May 30, 1901.)

1. HUSBAND AND WIFE—*Separate Property of Wife—Choses in Action—Promissory Note—Assignment—Endorsement.*

    The indorsement and transfer of her note by a married woman without the consent of her husband does not invest the title in the indorsee.

2. NEGOTIABLE INSTRUMENTS—*Husband and Wife—Presumptions—Possession.*

    The possession of a note by an indorsee of a married woman is presumed to be lawful, the note having been in possession of husband after the indorsement.

ACTION by T. E. Vann, administrator of Darius Edwards, against D. K. Edwards, heard by Judge *T. A. McNeill* and a jury, at Fall Term, 1900, of the Superior Court of HERTFORD County. From a judgment for the plaintiff, the defendant appealed.

*Winborne & Lawrence,* for the plaintiff.
*L. L. Smith,* and *S. J. Calvert,* for the defendant.

MONTGOMERY, J.   The note, for the recovery of which this action was brought, was originally the sole and separate property of the wife of the plaintiff's intestate, who was the mother of the defendant, and who died before her husband, the father of the defendant. The note was executed by the defendant to his mother and by her was endorsed and transferred to the defendant without her husband's knowledge or consent. If that was the defendant's only claim to the note it would avail him nothing (*Walton v. Bristol,* 125 N. C., 419), and it would have passed to the husband as his prop-

erty upon the death of his wife, subject to the payment of her debts.    But there was evidence tending to show that the note had been in the possession of the plaintiff's intestate after the death of his wife; that it was afterwards seen in the hands of the defendant, and was in his hands at the time of the plaintiff's intestate's death.    It is to be observed in passing, however, that there was no attempt made by the defendant to show how he got possession from his father.    Anyway, the defendant asked the Court to instruct the jury that, "If the jury find that the note in controversy was in possession of Darius Edwards at any time after the death of Sarah F. Edwards, and prior to October, 1896, and that afterwards it was in possession of the defendant, from October, 1896, until the commencement of this action, the law presumes that such possession was lawful and that he is the owner thereof, and the burden is upon the plaintiff to satisfy the jury upon preponderance of the testimony, that such possession is not lawful, and unless the plaintiff so satisfies the jury, you must answer the first issue 'No.' "

The prayer was refused and therein there was error. *Jackson v. Love,* 82 N. C., 405; *Causey v. Snow,* 120 N. C., 279.

New trial.

DOUGLAS, J., concurs in result.

CLARK, J., concurring in result, I dissent from that part of the opinion which says that "if" the defence had rested upon the assignment of the note by the wife, who owned it, being proceeds of sale of her land, it would not have availed, citing *Wallon v. Bristol,* 125 N. C., 419.    An appeal here is to review rulings of the Judge below upon exceptions duly taken.    There was no ruling below upon this point, no exception thereon, and the ruling which does come before us is upon an entirely different state of facts.    The *obiter* in *Walton v. Bristol* can only become authority if approved upon a

state of facts and upon an exception which calls it in question, and not by an *obiter* upon an "if."

*Walton v. Bristol* is not authority for the proposition that a married woman can not endorse and assign a bond belonging to her. In that case the assignment was called in question on the ground that it *"lacked the assent of the wife;"* here, the hypothetical case presented, for it is not before us on exception, is that the assignment by the wife of a bond, her own property, *lacks the assent of the husband.* What was said in the Walton case in reference to assignment of bonds by a wife without assent of her husband was not pertinent to the facts and was entirely *obiter.* This, therefore, is *obiter* upon an *obiter.* If, however, the proposition that the assent of the husband is necessary to the assignment by the wife of her choses in action is to be decided without facts or rulings or exceptions raising the point, it is my duty to give my reasons for dissenting, for no question of greater importance or of more far-reaching consequences is likely to come before us. Married women daily assign and transfer notes, checks and other personal property, or hypothecate them as security for loans, and the assignees take them relying upon the provisions of the Constitution. If the title to personal property does not pass without the husband's written consent, and he or his administrator can recover it back, it will cause great litigation and widespread alarm in business circles. There is no rule which can hold that a married woman's assignment of a bond or promissory note is a "conveyance" and therefore invalid without the written assent of her husband, which would not apply equally to her endorsement of a check, payable to her, or her assignment of the whole or part of a fund by her check payable to another, or her sale, transfer or other disposition of any other personal property.

In a barbarous age, woman was a slave, a chattel, and hence her property, and especially her chattels, passed to her

master upon marriage, and with it the right to chastise her. Fizt. Nat. Brev., 80; Litt., sec. 669, 670, which idea still survived to a late day; 1 Blk., 444; *Joyner v. Joyner,* 59 N. C., at page 326; *State v. Black,* 60 N. C., 262, and though in *State v. Oliver,* 70 N. C., 60, *Settle,* J., says at last "the courts have advanced from that barbarism;" it has been held as lately as *State v. Edens,* 95 N. C., 693, that a man can commit the foulest libel upon his wife with impunity because she is his wife.   Just in proportion as civilization has progressed, we have gotten away from a legal classification, which placed in the same category "infants, idiots, lunatics, convicts and married women."   The Constitution of 1868 took married women out of that class, except as to the Statute of Limitations, and recent legislation has removed even the stigma of that "survival" of the ideas of an age which deemed a married woman *"non sui juris."*

The Constitution of 1868, Art. 10, sec. 6, placed North Carolina nearly abreast of the legislation in England and our sister States by providing, "The real and personal property of any female in this State," after marriage, "shall be *and remain* the sole and separate estate and property of such female, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried."   The meaning of these words, never doubtful, were placed beyond controversy by the history of the movement for the emancipation of married women as to their property rights, and the uniform decisions in England and our sister States upon similar legislation or constitutional provisions.

The clearly expressed meaning is that a married woman, as to the control of her property, shall *"remain"* as if a *feme sole,* with liberty to devise or bequeath it, sell or dispose of it, except that as to property which can only pass by "conveyance" *i. e.,* by deed or mortgage, the written assent of her hus-

band is necessary. The general rule is that as to her "property, real and personal," her control is not changed by marriage. The sole restriction is that as to "conveyances" the husband's written assent is needed. To construe "conveyances" to mean ordinary dispositions of personal property, which are rarely made by "conveyances," is to put a forced meaning upon that word and to veto the free control given a married woman in the first clause by making the restriction as broad as the liberty. It is to say, in effect, that a married woman is to have as full control of all her property, real and personal, as if she remained single, except that she is to have control of none of it, real or personal, without the written assent of her husband.

Carrying out this idea, the courts invented the doctrine of "charges in equity" without a line in any statute to support it, and thereby restricted a woman's rights over her property into narrower limits than she possessed before the adoption of the guarantee of emancipation given her by the Constitution, though this charging in equity doctrine has since been virtually overruled. *Brinkley v. Ballance,* 126 N. C., 396. If a woman could, as provided by the Constitution, control her property, as if single, save as to alienation by deed, it follows that of course she can make contracts, as if single, whose enforcement might affect it. In New York, with the identical clause as to woman's control over property (for our Convention copied it), and in all other States with similar provisions, a married woman's right to contract is untrammeled. *Bank v. Howell,* 118 N. C., at page 273. But some of our decisions in later years have negatived the constitutional provision by holding that if a married woman can contract without written consent of her husband, thereby she will subject her property to the payment of her liability and therefore the courts will not allow her to sell, transfer or assign her personal property without written consent of her husband, be-

cause her power to contract in some respects is restrained by The Code, sec. 1826. If the restriction upon "contracting" by that statute restrains the free control given by the Constitution, then the statute and not the constitutional provision is null. But it seems to have been forgotten that the Statute of Frauds for two centuries and a half had made voidable oral contracts and agreements for sale of any interest in lands without any court ever conceiving that it was possible to hold that all verbal contracts were voidable, because realty could be sold to enforce the liability thereby created, and a party could thus "do indirectly what he was forbidden to do directly."

Having left the broad plain highway of the Constitution, every step since has taken us further and further into the wilderness. The construction that a married woman's personal earnings are still the property of her husband belongs to the age when she was her husband's chattel. It has no other support. There is no statute to that effect. It is true it was reannounced some fifteen years ago by one of our ablest and most accomplished Judges, who doubtless remembered that he had read it at law school in books hundreds of years old, but who forgot that he had read the decree of equality of woman's property rights in the Constitution of 1868. And so on from step to step we have gone into the wilderness away from the plain guarantee of the Constitution—that a married woman's rights over her property shall remain as if she were single, save that in deeds and mortgages the husband must give his written assent just as he has like control over his own property. except that she must assent to the conveyance of his realty. Instead of holding to this plain, unmistakable provision, we have a multiplicity of judicial interpretations, reservations, restrictions and conditions, till no one can say absolutely what are the rights of a married woman over her own property, except that they do *not* remain as if she were still single.

VANN *v.* EDWARDS.

An able and painstaking lawyer, Professor Samuel F. Mordecai, has tried to elicit something like orderly method as to a woman's rights over her property and her power to affect it by her contracts, for the instruction of his law class at Wake Forest College, and has thus summed up the confusing and somewhat conflicting results:

## ANALYSIS OF CONTRACTS OF MARRIED WOMEN, WHO ARE NOT FREETRADERS, ETC.

### SUCH CONTRACTS ARE:

1. EXECUTED—

   1. Which require husband's written consent, whether real or personal estate conveyed (1).
   2. Which also require private examination of wife and other statutory forms, etc., if really conveyed or mortgaged (2).

2. EXECUTORY—WHICH, AS AFFECTING—

   1. REAL ESTATE OF THE WIFE, MUST—

      1. Be written (3)—under seal—with private examination of wife; (4)
      2. Have written consent of husband; (5)
      3. Be charged expressly on specific real estate; (6) but the
      4. Consideration need not be beneficial; (7) and the
      5. Homestead will not be defeated (8) unless in case of a
      6. Mechanics and Laborer's Lien duly filed and prosecuted; (9) or
      7. By contract which is in effect a conveyance (10).

   2. PERSONAL PROPERTY OF THE WIFE—

---

(1) 125 N. C., bot. p. 423; 120 N. C., 51; 126 N. C., 48; 122 N. C., page 176; 126 N. C., middle page 374; 125 N. C., middle page 425; 126 N. C., page 51.
(2) The Code, § 1834; Laws 1899, chapter 235.
(3) 112 N. C., 622; 122 N. C., 571.
(4) 122 N. C., 572; 106 N. C., 289–359; 108 N. C., middle page 337; 117 N. C., at page 98; 119 N. C., top page 327; 119 N. C., at middle page 432; 131 N. C., bottom page 387.
(5) 122 N. C., 571.
(6) 122 N. C., 571.
(7) 122 N. C., 571.
(8) 122 N. C., 571; 112 N. C., 54.
(9) Constitution, Article X, § 4; 95 N. C., 85; 106 N. C., bottom page 300; 117 N. C., middle page 98.
(10) 113 N. C., 349.

VANN *v.* EDWARDS.

1. NEED NOT HAVE THE HUSBAND'S (WRITTEN) CONSENT IF AMONG—

Those excepted by The Code, Section 1326, to-wit: (11)
1. For her necessary personal expenses.
2. For the support of the family.
3. To pay her antenuptial debts.
(The husband is primarily liable for her support and that of the family (11a), and what comes within these exceptions depends upon the circumstances and surroundings of each case (11b). They are confined to goods bought for direct benefit of herself and family, such as food, clothes and other necessaries (12), and do not embrace supplies for a boarding-house, hotel, etc., by which the family is supported (13), or goods for a store which she runs (14), or a cook stove *per se* (15), agricultural supplies (16), except where husband of no account (17), money borrowed to pay a lawyer (18), land bought (19), building a house (20), hiring an overseer (21) ).
(a). All such contracts she may charge expressly upon her separate personal estate by herself or by her agent (22).
(b). But whether they must be expressly charged is not clear. It seems not (23).
(c). Her separate personalty—but not her realty—may be subjected to satisfy such contracts (24), but
(d). She will be entitled to her personal property exemption (25). The creditor has no specific lien (26).
(e). A personal judgment may be rendered against her on such contracts (27).

2. MUST HAVE THE HUSBAND'S WRITTEN CONSENT TO—

All contracts not excepted by Section 1826 (28), (though there is a dictum that it is unnecessary if the consideration is for the benefit of her separate estate) (29), of which contracts the following are the important elements to be considered—

(11) The Code, § 1826; 119 N. C., at page 326, paragraph 1, citing 103 N. C., 296; 121 N. C., at page 388, citing 110 N. C., 70; 119 N. C., 323; 121 N. C., 59; 106 N. C., bottom page 295 and near top 298; 126 N. C., bottom page 273 and top page 274.
(11a) 122 N. C., at page 567; 102 N. C., at page 528; 106 N. C., bottom page 296.
(11b) 102 N. C., 525.
(12) 98 N. C., 421; 122 N. C., 4.
(13) 98 N. C., 421; 122 N. C., 4.
(14) 117 N. C., 94; 126 N. C., 393.
(15) 102 N. C., 525; 106 N. C., bottom page 296.
(16) 106 N. C., bottom page 296, approving 102 N. C., 525.
(17) 126 N. C., 313, re-affirming 121 N. C., 59.
(18) 116 N. C., 708.
(19) 116 N. C., 144.
(20) 121 N. C., 387.
(21) 122 N. C., 1.
(22) 121 N. C., at top page 388, citing 110 N. C., 70; 119 N. C., 323; 121 N. C., 59; 106 N. C., bottom page 295 and near top page 298; 126 N. C., top page 274.
(23) See note 35, post, and cases there cited.
(24) 124 N. C., 410; 124 N. C., at middle page 614, citing 119 N. C., 323; 105 N. C., 301; 106 N. C., 289; 102 N. C., 236; 76 N. C., 468; 74 N. C., 348; 126 N. C., top page 274.
(25) 126 N. C., at page 274.
(26) 126 N. C., at page 274.
(27) 122 N. C., at page 715, modifying the language used in 116 N. C., 144.
(28) The Code, § 1826; 122 N. C., middle page 3.
(29) 108 N. C., 334, facts in the case and middle page 337, but see 94 N. C., at page 249; 106 N. C., bottom page 295; 106 N. C., at page 513; 125 N. C., at bottom page 425; 122 N. C., at page 3.

VANN *v.* EDWARDS.

1. *The consideration—which*

(a). Is not imported by a seal (30); but will be investigated, in all cases, where material, by the Court (31).

(b). Need not be beneficial to the wife if her separate estate is expressly charged (32), which charge must be express (33), but need not be specific (34).

(c.) If beneficial to her personally or to her separate estate, this may dispense with the necessity for an express charge (35).

2. *The form and essential contents of the contract—which*

(a) Must be in writing, it seems; (36)

(b) Must have the written consent of the husband; (37)

(c) Must contain an express charge on her separate estate (38), unless, perhaps, when the consideration is beneficial to her personally or to her estate (39)—or an intent to charge expressly must appear from the context of the instrument (40)—which charge, however, need not be specific (4); but in 122 N. C., at bottom page 574 and top page 575, and in 126 N. C., at bottom page 396, are dicta, which indicate that no "charging" is essential.

3: *The written consent of her husband—*

(a). Which is essential to all contracts not excepted by Section 1826 (42), (except where consideration beneficial?) (43)

(b). Which is sufficiently manifested—

(1). If set out in the body of the instrument—need not be by separate paper (44).

(2). By joining with the wife in executing the contract—signing it with her (45).

(3). By signing as subscribing witness to the wife's signature (46).

(4). By a separate paper of later date guaranteeing the payment of her contract (47), certainly if he also write and sign the contract as agent for the wife (48).

(c). Which written consent does not give validity to all her contracts, but simply to such as before the Act of 1871-'2 (The Code, §1826) she might have made without his consent (49). Nor does it enable the wife to make a contract at all—but simply to enter into an agreement in the nature of an executory contract (50).

(30) 103 N. C., middle page 313.
(31) 103 N. C., middle page 313.
(32) 106 N. C., 357; 106 N. C., at page 397; 103 N. C., at top page 313, and at page 311; 114 N. C., at page 616; 122 N. C., middle page 714; 118 N. C;, at page 273.
(33) Cases at notes 32 and 34.
(34) 103 N. C., bottom page 312; 113 N. C., middle page 354; 114 N. C., at page 616; 119 N. C., bottom page 326.
(35) 94 N. C., middle page 249; 106 N. C., at page 296; 108 N. C., middle page 337; 106 N. C., at page 710; 118 N. C., at page 274; 122 N. C., top page 575; 126 N. C., bottom page 396—all dicta which seem to justify this conclusion. But see 117 N. C., 94, and 125 N. C., bottom page 425, which lay stress on the fact that the husband gave his written consent to a contract of this character.
(36) 112 N. C., 622.
(37) The Code, § 1826.
(38) 118 N. C., at page 273; 119 N. C., bottom page 326; see cases also at notes 32 and 33.
(39) See note 35.
(40) 119 N. C., bottom page 326; 114 N. C., top page 616; 117 N. C., middle page 99.
(41) 103 N. C., bottom page 312; 113 N. C., middle page 354; 114 N. C., page 616; 119 N. C., bottom page 326.
(42) 122 N. C., at middle page 3; 112 N. C., 622.
(43) See note 29.
(44) 114 N. C., at page 616; 126 N. C., at page 51; 126 N. C., top page 397.
(45) 122 N. C., at page 574; 94 N. C., at page 249; 144 N. C., at page 616; 126 N. C., at page 551; 126 N. C., top page 397.
(46) 126 N. C., 47.
(47) 117 N. C., 94; 126 N. C., bottom page 51.
(48) 117 N. C., 94; 126 N. C., bottom page 51; 126 N. C., 393.
(49) 122 N. C., middle page 3.
(50) 119 N. C., bottom page 326, citing 116 N. C., 78, and 118 N. C., 271.

*4. The Legal Effect—*

The legal effect of those of her contracts. to which the written consent of her husband is required, is not that of a contract at all, but of an agreement, which will be enforced in equity against her separate personal estate (51), not only that which she had when contract was made, but that acquired afterwards (52). No judgment *in personam* can be rendered upon such contracts or *quasi* contracts (53). Being enforceable only in equity, a Justice of the Peace has no jurisdiction (54). It must be remembered that a Justice has jurisdiction of an action in which a mechanic's lien is involved (55), and that a judgment *in personam* can be rendered by the Superior Court on contracts excepted by §1826, but such judgments can be satisfied only out of the personalty (56).

Unless there is a mortgage, pledge, deed of trust, etc., or a mechanic's lien, the contract does not debar her of her personal property exemption in her personalty (57). The contract charging her separate estate does not give the creditor a lien (58), nor a right to seize her property under claim and delivery proceedings (59). He can only proceed by judgment and execution (60), which last must set out particularly the personalty to be subjected (61), but perhaps can be levied on that and any other personalty she owns (62). She may be subjected to supplemental proceedings, and her personalty, or some of it, subjected thereby to her debts (63). A receiver may be appointed in a proper case (64). The cases require more to be in the execution than the statute requires (65).

It is impossible for anyone to say whether or not he is right in every particular, notwithstanding his great and most careful research, and his citations of authority sustain him. If we are now to add, by any *obiter,* upon facts not raising the point, that a married woman can not endorse or sign a bond without her husband's consent, his table already needs further amendment.

Professor Mordecai, however, omitted to note that the doctrine of "charging" the wife's property is held to be without warrant in the Constitution or statutes. *Brinkley v. Ballance,* 126 N. C., at page 396, *Faircloth,* C. J., alone dissenting.

---

(51) 119 N. C., bottom page 326; 88 N. C., 300; 122 N. C., at pages 713, bottom 714, below middle page 715.
(52) 117 N. C., middle page 100.
(53) 88 N. C., 300; 122 N. C., at pages 713, bottom page 714, below middle page 715.
(54) 122 N. C., at page 713, bottom page 714 and below middle 715.
(55) 95 N. C., 85; 106 N. C., bottom page 300; 117 N. C., middle page 98.
(56) 122 N. C., at page 715, modifying 116 N. C., 144.
(57) 103 N. C., at page 313; 117 N. C., at page 101; 126 N. C., at page 273.
(58) 117 N. C., at page 100.
(59) 126 N. C., at page 273.
(60) 126 N. C., at page 273.
(61) 117 N. C., bottom page 100.
(62) 117 N. C., middle page 100 and bottom page 100.
(63) 117 N. C., at page 101.
(64) 114 N. C., at middle page 617; 116 N. C., middle page 54; The Code, § 379 (2), and see 111 N. C., 625.
(65) The Code, ? 443; 117 N. C., at page 100.

The remedy is to get out of this wilderness, which becomes more and more tangled as we proceed, with the underbrush more and more confusing, and return to the straight and unmistakable highway marked out by the organic law, which is beautiful by its simplicity and clearness, and to plant our feet once more upon the rock of the Constitution.

Instead of the "codeless myriad of precedent," cited by Professor Mordecai, the Constitution has but one rule which no one should misunderstand or misapply, which is that a married woman remains as absolute owner of her property as if she stayed single, except only that in "conveyances" (*i. e.* deeds), the husband must give his written assent, which is exactly the case as to the husband's property, over which he retains the same control as if single, save that by statute in deeds for his realty the wife must joint.