G. C. FARTHING v. J. H. SHIELDS and wife.

*Married Women—Separate Estate—Bond—Mortgage—The Code—Charge—Support of the Family—Necessary Personal Expenses—Consent in Writing.*

1. *The Code,* §1826, does not confer upon the wife power to make a *legal* contract, even with the written consent of her husband, or where it is for her personal expenses.

2. The object of this section was to require the written consent of her husband to charge her statutory separate estate, except for necessary expenses, the support of the family, and to pay ante-nuptial debts.

3. When the husband and wife signed a bond and mortgage upon the wife's land, to secure a sum advanced to discharge a prior mortgage thereon, and to secure supplies bought principally by the husband and used for himself and family, and it did not appear that they were *necessary* for her personal expenses, for the support of the family, or to pay ante-nuptial debts: *Held,* the action being upon the bond, simply, and not to foreclose the mortgage, judgment against her could not be recovered. *Held second,* that the separate estate could not be specifically charged.

4. A bond executed jointly by husband and wife is, "with his consent in writing," within the meaning of the statute, but is not sufficient to charge the wife's separate estate, unless it expressly designates it.

106—19

5. Unless the contract is for the wife's benefit, or of such a nature as necessarily to imply a charge, it must be specific.

6. The wife, with the written consent of her husband, and, in the excepted cases mentioned, without it, may charge her statutory separate *personal* estate by executory contracts, but in case of *real estate*, the privy examination of the wife is necessary.

7. When the consideration is sufficient to necessarily imply a charge, no express charge or written consent is necessary as to her personal estate. There must be a deed and privy examination to charge real estate.

8. Discussion by Shepherd, J., of the law relating to the separate estate of married women.

This was a CIVIL ACTION, tried before *Armfield, J.,* at January Term, 1890, of the Superior Court of Durham County, brought by plaintiff to recover of defendants a balance of about $1,000 on a note executed by defendants in the following words:

" On or before the first day of April, 1887, we, or either of us, promise to pay G. C. Farthing $1,340, with interest from date, at the rate of eight per cent., until paid.

" Joe H. Shields.    [Seal.]

" Franchan Shields.    [Seal.]

" Witness: Robert McCauley.

" July 13th, 1886."

The Court rendered a judgment against the defendant Joe H. Shields, but refused a judgment as to the *feme* defendant.

From this ruling the plaintiff appealed, and the questions involved relate to the liability of the *feme* defendant and her separate estate for the balance due upon the bond sued upon. The complaint does not allege that the *feme* defendant has anything but real estate.

The plaintiff tendered the following issue: " What sum, if any, do the defendants owe plaintiff?"

His Honor refused to submit that issue, and submitted the following:

"1. Was the debt made by the wife for her necessary personal expenses?

"2. Was the debt made for the support of the family of the wife?

"3. Did the wife contract the debt with the written consent of her husband?

"4. Was it the intention of the wife, in contracting the debt, to charge her separate estate?

"5. Was there fraud on the part of the plaintiff, or a mutual mistake of plaintiff and defendant, in making the bond sued on?

"6. How much is due upon the bond sued on from Joseph Shields?

"7. How much is due upon the bond sued on from Franchan Shields?"

To these issues the plaintiff excepted.

The original complaint simply alleged the execution of the bond, and that there had only been paid upon it the sum of $544.91, which was paid on June 4th, 1888. To this complaint the defendant demurred, and the complaint was amended so as to allege that the bond was executed with the written consent of the husband; that the consideration was for the necessary personal expenses of the wife, and also for the support of her family. It was also alleged that "she had a separate estate in real property, and the debt secured by said note was specially charged on her separate estate and property at and before the execution thereof, to-wit, the mortgage to plaintiff for $1,340, dated July 13th, 1886."

To this there was a general denial. The succeeding several pleadings contained particulars as to the dealings of the parties, and the correctness of the accounts, for the settlement of which the bond and mortgage were executed. Fraud in the consideration was also alleged, all of which particulars it is not material to state.

The only witnesses to material matters were the plaintiff and the female defendant. It was in evidence, and admitted, at the time of executing said note, that defendants also executed to plaintiff a mortgage to secure the same upon land belonging to the female defendant. The plaintiff testified that he was a merchant in Durham, and had been, for several years, dealing in dry goods, groceries, and general merchandise. That defendant J. H. Shields had become indebted to him for provisions and agricultural supplies, clothing, etc., to the amount of several hundred dollars; that he procured for defendants a loan for $550 from one Walker, which they secured by a note and a mortgage on the *feme* defendant's land (part of the land embraced in the mortgage afterwards in 1886 given to plaintiff); that the money procured from Walker was paid to plaintiff as a credit on the account then due him, and never actually went into the hands of either defendant; that when said note and mortgage became due Walker wanted his money, and defendants were unable to pay, and, at the request of Walker, he went to see them, and informed them that Walker said he would sell the land under his mortgage if they did not raise the money and pay his note; that both defendants requested plaintiff to pay Walker's note, and have his mortgage cancelled, and they would give him a note and mortgage on a part of the *feme* defendant's land to cover the amount so to be paid to Walker, and would include what was then owing to him on the account in the name of the male defendant; that at their request, and in consideration of such promise, he did pay the Walker note and mortgage, $550 and interest, and had the same cancelled, and delivered it and the note to defendants, and charged the amount of such payment on J. H. Shields' account; that, in a few days thereafter, defendants executed the $1,340 note mortgage to him, above set out; that the male defendant came to Durham (the defendants lived in Orange County),

and told him to write his note and mortgage and he would take it home and he and his wife would execute both and return them to him; that he did write them; J. H. Shields took them and returned them the next day executed by himself and his wife, with the mortgage proven before a Justice of the Peace of Orange County; that the goods, which were part of the items of charge on the account which the note of $1,340 was given to pay, were bought principally by the male defendant, and less than $50 worth of them by the *feme* defendant. That he had no written or verbal orders from her to sell the said goods; that when he saw her about the Walker mortgage, he showed her a statement of the sums due him, and she said the account was larger than she thought, and that some of the things that her husband was charged with he had not brought home, and that plaintiff ought not to have let him had them without a note from her, but promised to give a note and mortgage to secure it; that J. H. Shields was well acquainted with the account and its items, and frequently looked over it, and did so on the day the $1.340 note and mortgage were drawn, and agreed to the same as correct. That J. H. Shields has no property.

Mrs. Franchan Shields testified that she never saw the account; did not know, and never did know, what items composed it; that she had nothing to do with it; did not authorize her husband to buy the things for her; that when she bought goods from plaintiff she always paid cash for them; knew her husband was buying goods from plaintiff but did not inquire into his business. She gave no testimony about the Walker note and mortgage, or its payment, nor about the execution of the note sued on, or the mortgage given to secure it.

His Honor directed the jury to answer the first five issues No; to the sixth, $997.58, with interest from June 4, 1888,

the amount unpaid on said note; and the seventh, Nothing. To which directions, singly and jointly, plaintiff excepted.

His Honor charged the jury that the law required that the goods sold by plaintiff should have been bought bv defendant Franchan Shields, and for her necessary and personal expenses, before they could answer the first issue Yes; and that, upon the evidence, they must answer it No. To this plaintiff excepted.

That they could not answer the second issue Yes, unless the goods charged on the account of plaintiff were bought by Franchan Shields, and for the support of her family; and that there was no evidence that they were so bought, and they must answer that issue No. Plaintiff excepted to this instruction.

That they could not find that the debt was contracted by the *feme* defendant with the written consent of her husband, because by " *the debt*" was not meant the *bond sued on*, but the account which the note was given for; and that there was no sufficient evidence to entitle the jury to answer the third issue in the affirmative, and they must answer it No. To this instruction plaintiff excepted.

That even if " *the debt*" meant the bond sued on, yet the evidence was not sufficient to justify the jury in answering said issue in the affirmative, for the signature thereof by the husband was not a written consent to its execution by his wife, but only indicated his willingness to be bound on the note. To this instruction plaintiff excepted.

Judgment as set out in the record. Plaintiff moved for a new trial, and alleged as grounds therefor the errors complained of above as specially pointed out. Motion overruled. Plaintiff gave notice of appeal to the Supreme Court.

*Messrs. W. W. Fuller* and *F. L. Fuller*, for plaintiff.
*Mr. J. S. Manning*, for defendants.

SHEPHERD, J.: This action is not brought to foreclose the mortgage executed by the defendants on the wife's land, but its purpose is either to obtain a personal judgment on the bond, or to enforce its payment out of the general statutory separate estate of the *feme* defendant.

As the plaintiff obtained a personal judgment against the husband, it is only necessary for us to consider the liability of the wife, or her statutory separate estate for the debt sued upon.

Apart from the mortgage given to secure it, the bond is an executory contract, and it is well settled by the uniform decisions of this Court that, except in the cases mentioned in *The Code,* §§ 1828, 1831, 1832, 1836, a *feme covert* is, at law, incapable of making any executory contract whatever. Accordingly, it has been determined that *The Code,* § 1826, requiring the written consent of the husband in order to affect her real or personal estate, did not confer upon her (even when such written consent was given, or where the liability was for her personal expenses, &c.) the power to make a legal contract. Its object was to require the written consent of her husband, in order to charge in equity her statutory separate estate, on the same principle which requires the consent of the trustee when the separate estate is created by deed of settlement. *Pippen* v. *Wesson,* 74 N. C., 437; *Flaum* v. *Wallace,* 103 N. C., 296.

In the light of these, and other decisions, the section should read as follows: "No woman during her coverture shall be capable of making any engagement in the nature of an executory contract, by which her statutory real or personal estate is to be charged in equity, without the written consent of her husband. But where the consideration is for her necessary personal expenses, or for the support of the family, or where it is necessary in order to pay her antenuptial indebtedness, she may so charge such real or personal estate without such consent of the husband." As to

the real estate, it will be seen that this construction is here-inafter modified.

The necessary conclusion, therefore, is that Mrs. Shields had no legal capacity to execute the bond sued upon, and that no personal judgment can be rendered against her.

Appreciating this difficulty, the plaintiff amended his complaint so as to charge the separate estate.

As the instrument executed by the wife, with the written consent of her husband, did not specifically charge the separate estate, it was necessary to show such a consideration inuring to her benefit, or the benefit of her said estate, as would necessarily imply such a charge. *Flaum* v. *Wallace, supra.* It was for this purpose that the plaintiff undertook to show that the consideration of the instrument was either for the wife's necessary personal expenses, or for the support of the family. These facts being alleged in the amended complaint, and denied by the defendants, the issues settled by his Honor were correct, and the exception in respect to their submission must be overruled. We also concur in the ruling of the Court that there was not sufficient evidence to show that the indebtedness was incurred for the necessary per-sonal expenses of the wife, or for the support of the family. The plaintiff testified that the bond was given to secure the indebtedness of the husband to the plaintiff, "for provisions, agricultural supplies, clothing, etc.," and that only about $50 of them were bought by the *feme* defendant. The char-acter of the articles received by her is not stated, nor does the testimony disclose anything which is inconsistent with the idea that she received them on account of her husband. Very clearly, it is not shown that they were obtained for the support of the family, or that they were necessary for that purpose, by reason of the husband's neglect to perform his duty in that respect. *Berry* v. *Henderson*, 102 N. C., 525. Neither can we see that they were purchased for her "neces-sary personal expenses." Indeed, it seems that she had but

little to do with the making of the accounts, and that the transactions were managed solely by the husband and for his benefit. For these reasons, we think that there was no error in the instructions given on the first and second issues.

As to the third issue, it is argued that there was error, on the part of the Court, in charging the jury that the writing was not executed with the written consent of the husband. In this, we agree with the plaintiff, but in view of the findings on the preceding issues, the erroneous ruling becomes immaterial. For, conceding that the husband gave his written consent, the writing would still be insufficient to charge the separate estate, as it contains no express charge upon it, and this is absolutely necessary where the consideration is not for the benefit of the wife, or her said estate, and of such a character as to necessarily imply a charge. (See *Flaum's* case, *supra*)

This disposes of all the grounds specifically set forth in the complaint upon which the separate estate is sought to be charged. But as there was evidence tending to show another consideration inuring to the wife, and the fourth issue having been framed so as to comprehend it, we assume that his Honor passed upon this phase of the case also, and we will, therefore, consider it. It seems that the husband, defendant, was indebted to the plaintiff in the sum of several hundred dollars for provisions, agricultural supplies, &c, and that the plaintiff procured from one Walker, a loan of $550, which was secured by a mortgage on the land of the defendant wife. The money never went into the hands of either of the defendants, but was applied by the plaintiff to the indebtedness of the husband. When the mortgage matured Walker threatened to foreclose, and the plaintiff paid off and cancelled the said mortgage and took one to himself, from the wife and husband, on apparently the same land, to secure the amount so paid to Walker, and also some eight or nine hundred dollars due him by the husband.

It is contended that, inasmuch as a part of the consideration of the bond sued upon was for the benefit of the separate estate of the wife, in relieving it from the burden of the Walker mortgage, that her general statutory separate estate is chargeable for the same.

We had occasion, in *Flaum* v. *Wallace, supra,* to discuss at some length a married woman's capacity to charge, and the manner in which she may charge, her statutory separate estate. We there held that the wife could, with the written consent of the husband (and without his consent, in the cases within the exceptions in *The Code,* §1826), bind her statutory separate *personal* estate by way of engagements in the nature of executory contracts. We further declared that she could so charge her said separate personal estate where the consideration was not for her benefit, or for the benefit of the estate, provided she expressly charged it in the instrument creating the liability. We were greatly influenced in so holding because of the power of the wife to absolutely dispose of her statutory separate personal estate by the simple written assent of her husband, and we deemed it but reasonable that if she could so absolutely dispose of such property, she might exercise the lesser power of charging it, either expressly or by necessary implication.

But when we come to the statutory separate *real* estate, the foregoing reasoning fails, because, under our statute law, the wife and husband cannot dispose of such property unless the former has been privately examined, separate and apart from the husband. Whatever may be the rulings in other States (and they are admitted be in hopeless conflict), we prefer to adhere to the principle, so often declared by this Court, that a married woman, as to her statutory separate property, is to be deemed a *feme sole* only to the extent of the powers conferred by the Constitution and laws creating the same. Holding, as we do, that her power to charge such separate estate, by an engagement in the nature

of a contract, is measured and limited by her power to dispose of the same, it must follow that if the wife, with the written consent of her husband, had expressly charged her statutory separate real estate, it would have been of no avail without privy examination.

But it may be said that no such express charge or written consent is necessary where the consideration is sufficient, as in this case, to necessarily imply an intent to charge. This is true, as we have said, as to the personal estate, but it has no application, we think, to the statutory separate real estate.

The case of *Withers* v. *Sparrow,* 66 N. C., 129, cited by the plaintiff, was a bill in equity, under the old system, to charge the equitable separate estate of a married woman, and is no authority in cases where charges are sought to be enforced against the statutory separate estate. Neither was the point directly called to the attention of the Court and passed upon in *Arrington* v. *Bell,* 94 N. C., 247.

On the other hand, it is well settled by this Court that the lands of a married woman cannot be charged by any undertaking on her part in the nature of a contract, unless it be evidenced by deed accompanied by privy examination. This view is strongly expressed by the Court in *Scott* v. *Battle,* 85 N. C., 184, where the land of a married woman was sought to be charged with the purchase-money received by her from a purchaser to whom she had executed a deed, but to which she had not been privily examined. RUFFIN, J., said that "upon principle, too, it seems impossible to conceive that the law will ever permit that to be done indirectly which it forbids to be done directly. Or that it will give its countenance to a doctrine which must subvert its whole theory in regard to the contracts of married women. To do so would be equivalent to saying that a *feme covert* cannot, by express deed, unless privately examined thereto, convey or charge her lands, and yet may, by a mere con-

tract to sell, and the acceptance of the purchase-money, create such a lien upon it as a Court of Equity will enforce by. a sale against her will. If this be tolerated, then the statute intended to regulate the contracts of a married woman has no longer any virtue left in it, and all the teachings of the common law as to her disability are swept away. As to her not being privileged to commit fraud, there can grow no fraud out of the contract of a married woman. It stands upon its own strength, both in law and equity. If perfect, then well and good; if imperfect, then it is an absolute nullity. No matter upon what consideration, and, as was said in *Towles* v. *Fisher*, 77 N. C., 438, no one can reasonably rely upon the contract of a married woman, or on a representation as to her intentions, which is, at best, in the nature of a contract, and by which he must be presumed to know that she is not legally bound."

The distinction between the liability of the wife's separate estate for undertakings in the nature of contracts, and where she has obtained an undue advantage by fraud, is well illustrated by the following cases: *Weathersbee* v. *Farrar*, 97 N. C., 106; *Walker* v. *Brooks*, 99 N. C., 207; *Towles* v. *Fisher*, 77 N. C., 437; *Boyd* v. *Turpin*, 94 N. C., 138; *Burns* v. *McGregor*, 90 N. C., 222., Applying these principles to the case before us, it is plain that the transaction amounted to nothing more than a loan of money by the plaintiff to the wife. The plaintiff, it is presumed, knew of her inability to charge her general statutory separate real estate in any other way than by a deed and privy examination, and if we were to give the effect contended for to such a transaction, it would, as Judge RUFFIN said, be doing, indirectly, what the law forbids to be done directly.

In passing, we will state that the case of *Smaw* v. *Cohen*, 95 N. C., 85, may be sustained, as to the liability of the separate estate, on the ground that the statute, ch. 41 of *The Code* (Liens), directly charges it.

There is another view, however, which is fatal to the plaintiff. Where the separate estate is sought to be charged, "the complaint should allege that the wife has a separate estate subject to the charge." *Dougherty* v. *Sprinkle*, 88 N. C., 300; *Flaum* v. *Wallace, supra.*

Here the only separate estate described in the complaint is the land upon which the plaintiff has a mortgage for the money paid to Wallace by the plaintiff, and it does not appear that the wife has any other property whatever.

In closing, we may remark that it is not a little strange that this mortgage does not appear, upon the pleadings, to have been foreclosed before resorting to the present action.

Upon a review of the entire record, we are of the opinion that the conclusion reached by his Honor was correct, and that the judgment should be affirmed.

Affirmed.