SARAH E. JENNINGS v. JOHN L. HINTON *et al.*

(Decided February 27, 1900.)

*Life Insurance Policy—Assignment by Wife—Witnessed by Husband—Constitution, Article X, Section 6.*

The signature of the husband, as witness, to a written assignment by the wife, of her interest in an insurance policy on his life, taken out by him for her benefit, is equivalent to an assignment by the wife, "with the written assent of her husband," as provided by Art. X, sec. 6, of the Constitution.

CIVIL ACTION upon a life insurance policy issued by The American Legion of Honor to B. F. Jennings upon his life for the benefit of his wife, Sarah E. Jennings, plaintiff. She had transferred the policy by a written assignment endorsed thereon, signed by her, and witnessed by her husband, to the defendant John L. Hinton.

Upon the death of B. F. Jennings, his wife instituted this suit. The insurance company paid the money ($5,000) into court—and the question presented to his Honor, *Starbuck, J.,* at December Special Term, 1899, of PASQUOTANK County, was, who was entitled to the money. The plaintiff claimed that she was entitled on the ground that her assignment of the policy was made without the written consent of her husband.

The defendant claimed that he was entitled, for the reason that the signature of the husband, as witness, to her assignment amounted to his written assent.

His Honor instructed the jury, that the subscribing by the husband as a witness was not a consent in writing, as the law required.

The defendant excepted. Verdict for the plaintiff. Judgment accordingly. Appeal by defendant.

JENNINGS *v.* HINTON.

*Messrs. Pruden & Pruden,* and *Shepherd & Shepherd,* for defendant, (appellant).

*Mr. E. F. Aydlett,* for plaintiff.

FURCHES, J., delivers the opinion.

CLARK, J., delivers concurring opinion.

DOUGLAS, J., delivers dissenting opinion.

FURCHES, J.   The plaintiff, Sarah E. Jennings, on the 23d of June, 1884, was the wife of B. F. Jennings, and continued to be such until the time of his death on the 11th of February, 1899.

On the said 23d of June, 1884, the said B. F. Jennings took out a policy of insurance upon his own life, for the benefit of his wife, in the sum of $5,000.

On the 22nd of April, 1897, the plaintiff, Sarah E., made, executed and delivered to the defendant J. L. Hinton the following written assignment, which her husband, B. F. Jennings, witnessed:

"ELIZABETH CITY, N. C., April 22, 1897.

"For value received I hereby assign and set over to John L. Hinton all my right and interest in Benefit Certificate No. 73886 in the American Legion of Honor Insurance Company, the same being insurance on the life of my husband, Benjamin F. Jennings, dated the 23d of June, 1884, the said certificate or policy being in the sum of $5,000, being for my benefit.   The said Hinton to have the said $5,000 in the said policy absolute, with power at the death of the said Benjamin F. Jennings to collect the same, and apply it to his own use.

"SARAH E. JENNINGS.   (Seal.)

"Witness: B. F. Jennings."

This statement presents the only point in the case necessary for our consideration: Was this an assignment by the wife "with the written assent of her husband," as provided by Art. X, sec. 6, of the Constitution of this State? The Court held that it was not, and so charged the jury, and to this the defendant Hinton excepted.

It has been suggested that the right to property was the right to dispose of it—the *jus disponendi*—and to hold that she could not convey without her husband's assent would be in violation of that principle of law. But to sustain this suggestion would be to hold that the Constitution was unconstitutional.

At common law, upon the marriage of a woman the whole of her personal property became that of her husband, and he had the sole right to dispose of the same, and this was the law in this State until the adoption of the Constitution of 1868. The husband paid the wife nothing for her property, thus acquired, but it became his, as one of his marital rights. The Constitution of 1868 abolished this fiction and rule of the common law, and said the wife's property should remain her's although she married; but to convey the same she must have the "written assent of her husband." Constitution, Art. X, sec. 6. This provision of the Constitution was an enabling act, giving the wife rights that she did not have at common law—the right to retain all her property, with the simple incumbrance that she could not convey it without the "written assent of her husband." This provision does not restrict her property rights, but greatly increases and enlarges them.

But it seems to us that this discussion is aside from the real point in this case, as we shall take the Constitution to be constitutional. So the question reverts to the original propo-

JENNINGS *v.* HINTON.

sition.: Did the plaintiff convey this policy of insurance to the defendant with the written assent of her husband? In other words, was the simple fact that the husband witnessed the written assignment of the wife, by signing his name thereto, the "written assent of the husband?"

Had the husband not signed his name to the paper, though he may have negotiated the trade and received a consideration therefor, the conveyance (the assignment) would have been void (*Walton v. Bristol,* 125 N. C., 519), because the husband *wrote* nothing. But where the wife signed a note as the surety of the husband, it was said by the Court that this would be sufficient to satisfy the requirments of law, as that the husband and wife both signed the note, and it must be presumed that the wife signed the note with the assent of her husband. In other words, signing his name to the paper was *a writing,* and his assent would be inferred. *Farthing v. Shields,* 106 N. C., 289. Upon a similar state of facts, where the wife signed as surety, the Court held the same doctrine, using this language: "It is also unnecessary that the assent of the husband should be signified by a separate clause. His execution of the paper jointly with his wife is a sufficient compliance with the law in this respect," citing *Farthing v. Shields, supra; Jones v. Craigmiles,* 114 N. C., 613. Where a husband, as the agent of his wife, made a written statement in the name of his wife to obtain the purchase of goods, and five or six days thereafter the husband made a written guarantee for the goods, it was held that the signing of the written statement by the husband, as the agent of the wife, was a signing by the wife, and that his guarantee some days after was his written assent; that the guarantee was a sufficient writing to satisfy the demands of the law, and his assent would be inferred. *Bates v. Sultan,* 117 N. C., 94.

However violent this presumption may be, for the public good, it is presumed that all persons know the law. This being so, both the plaintiff and her husband knew that the wife could not dispose of this policy of insurance without the *written* assent of the husband; and knowing this, the wife signed the instrument "disposing" of the policy to the defendant Hinton, and the husband wrote his name as a witness to this disposition by the wife of her property. But from the transaction we think it may be reasonably inferred that they had actual knowledge that the wife could not convey the policy without the written assent of the husband—as it was not a transaction that required a subscribing witness for any purpose unless it was to meet this requirement—that it must be with the written assent of the husband. But be this as it may, the law presumed the knowledge.

From the logic of the decisions we have cited and the other cases cited in these decisions, it appears to us that there was error in this instruction—"that the fact that it appeared that the husband signed as a witness was not his written consent."

This doctrine may have been carried right far, but to hold that this was not the written assent of the husband would put up in conflict with what has been repeatedly held to be the law by this Court.

Error.    New trial.

CLARK, J., concurring. I concur that if written assent was required in this instance, the appending by the husband of his signature as witness was sufficient assent, both by the reason of the thing, and upon all the precedents. But I concur in the result for the further reason that the transfer of the policy by the wife was valid without the written assent of her husband.

The Constitution, Art. X, sec. 6, says the property of the wife "shall be and remain her sole and separate estate and property * * * as if she were unmarried." The only exception to that broad provision is that the husband is given merely a veto upon her "conveyances." He is not required to join in them, for he has no interest in her property (*Manning v. Manning,* 79 N. C., 293), and of course, can pass none. This veto power does not extend to devises and bequests, nor to any other disposition of her property, save in those cases which under the law must be made by a "conveyance," i. e., deeds and mortgages of realty and such mortgages of personalty as are made by deed.

To hold that the husband's veto power, by reason of the requirement of his written assent, extends to all gifts, sales, transfers and assignments of her personal property, oral or written, is to make the veto as broad as the enfranchisement. It is to say that her property shall remain hers, as before marriage, but that in no case whatever shall she own it as if she had remained single. It would be to require the husband's written assent in cases where no writing would be necessary on the part of the wife. There is no possible construction of this provision which would require the husband's written assent to the transfer of this policy which would not require the husband's written assent to the wife's endorsement of a check, or the gift of an old calico dress or a pair of second-hand shoes—in short, a negation of the broad enfranchising clause which guarantees a married woman as full ownership of her property as if she had remained single, save for the veto given the husband upon her "conveyances." The statutes and the decisions point out what are conveyances, and by no stretch of legal construction can the transfer of this policy, the endorsement of a check or bond (often

JENNINGS *v.* HINTON.

in blank and therefore with no grantee), or the gift or sale of any personal property, be termed "conveyances." It was expressly held in *Kelly v. Fleming,* 113 N. C., 133, that the word "conveyance" did not embrace a sale or any other disposition of personal property which was not required to be by deed.

There should be no difficulty as to the rights of married women if we would follow the plain letter of the constitutional provisions without reference to the barbarous doctrine of the "subjection of women" whose survival in the common law the will of the men of this more enlightened age abolished by this section of the Constitution. It is not by virtue of, but contrary to, this recognition in the organic law of the equality of women before the law, that our statute law, till the last session of the General Assembly, still classed married women in two sections of The Code with "idiots, lunatics, infants and convicts," and still attempts to hamper their freedom of contracting (though the sole restriction by the Constitution is limited to conveyances), and that our decisions still make the husband absolute owner of all the wife's earnings, even though made by her needle.

The common law contained many noble principles which will live for all time, but from the time and nature of its origin it had the alloy of much that was base and barbarous. In the evolution of the race and in the advance of civilization, most of the alloy has disappeared. One of the last survivals was the essentially barbarian doctrine that a woman, upon marriage, became the chattel of her husband, for it was by virtue thereof that he acquired (besides the right to chastise her at will which the courts have abrogated) her property and her earnings. This the Constitution of 1868, in accordance with enlightened progress everywhere else, swept away. It

made her the equal of her single sister, with as full rights over her property in every way, save as to the husband's veto upon her "conveyances." To extend that to a vote upon her gifts, sales or other disposition of property, not required to be made, and in fact, not made by any conveyance, would be, in my humble judgment, a judicial repeal of the constitutional provision.

Prior to 1868, when by a marriage contract a wife retained her separate estate, no assent of the husband, written or oral, was required for the disposition of her personalty. The constitutional provision was not intended to put her in a worse situation. It extends her ownership to all property, both real and personal, but the veto given to the husband does not. It extends only to conveyances, and therefore has no application to any disposition of personalty unless a "conveyance" of it is necessary. It is a novelty in jurisprudence if an oral disposition of personal property, or a written disposition of it by endorsement or assignment of a check, note or other paper, is a "conveyance," especially in view of the context and evident purpose of the clause of the Constitution guaranteeing, not restricting, property rights of married women.

DOUGLAS, J., dissenting. I can not assent to the opinion of the Court, because it appears to me to be against both the letter of the law and the current of our decisions. The opinion concedes that if the husband had written *nothing,* even if he had received ample compensation for his verbal assent, the assignment would have been void. Why? Because the Constitution requires the *written* assent of the husband. In this case he has written as near nothing as he well could, and has written absolutely nothing that can be construed into an *express* assent. He can not be considered a party to the assignment, because he expressly and in terms limits his sig-

nature to that of a witness, and it would be a very dangerous doctrine to hold that a mere witness can be construed into a party to a contract in which his name is not even mentioned. But it is said that his signature as a witness is *written,* and it must be held as an *implied* assent because he is *presumed* to know that the law required his *written* assent. I may be too conservative, but I fear that we have already carried the docrine of implications, waivers and presumptions too far in this State. Any one goes far enough in itself, and when an implication requires a presumption to support it, I am disposed to stop. It is very easy to comply with the Constitution. Instead of writing the one word "witness," a word in itself of the strictest limitation, the husband could just as easily have written the words "I assent" or "consent" or "agree" or "concur" or some word of similar meaning. He might have at least omitted the qualifying word "witness." It is a common practice for men to witness papers of the contents of which they are ignorant, or have only the most general idea. Even when witnesses are required by law, I understand that they are witnesses merely to the execution of the paper, and not to its contents or legal effect. It is true a witness may be shown to have known what was in the paper, and if so, may be equitably estopped under certain circumstances from denying its truth. But there is no estoppel in this case, because the husband is not asserting any claim by himself or others, and his act could not estop the wife. The wife in such a case can not be estopped even by her own act, as this would completely nullify the constitutional provision. What good would it do to declare an act invalid, and then estop the wife from asserting its invalidity? This Court has repeatedly said that this requirement was for the protection of the *wife* against the wiles and insidious arts of

others.   *Ferguson v. Kinsland,* 93 N. C., 337, 339; *Green v. Bennett,* 120 N. C., 394; *Slocomb v. Ray,* 123 N. C., 571, 573.

I do not think that the cases cited in the opinion of the Court sustain its decision, as in all those cases the husband was a party to the contract, and not a witness.   In *Farthing v. Shields,* 106 N. C., 289, and *Jones v. Craigmiles,* 114 N. C., 613, this Court held a note, though signed by both husband and wife, did *not* bind the latter.   The case of *Sultan v. Bates,* 117 N. C., 94, decided by a divided Court, goes further than any case I can find in our Reports, and yet that case is expressly decided upon the ground that the husband expressly guaranteed in writing the payment of the wife's debt.   This Court said, on p. 99: "Consent is embraced in the idea of guarantee.   The promise that he will make good his wife's agreement, pay her obligations if she does not, can carry with it no other idea than that he desires and expects her to pay out of her own property her debts, and not cause loss to him as her guarantor for her failure."   Nowhere can I find in that case any foundation for the opinion of the Court in the case at bar, and yet it is cited to sustain an implied assent, founded upon a presumption to a contract in which the gross inadequacy of consideration is itself suggestive of fraud.