WACHOVIA NATIONAL BANK v. IRELAND.

(November 27, 1900.)

1. *Homestead—Married   Woman—Husband   and   Wife—*
   *Separate  Estate—Charge—Mortgage.*

> A married woman has a right to a homestead in her separate
> estate, where she, with the written consent of her husband,
> charges her estate for the payment of debts, but uses no
> words of conveyancing in the instrument charging the
> same.

2. *Mortgages—Separate Estate—Charge.*

> The paper-writing set forth in the opinion of the Court does not
> constitute a mortgage.

CIVIL ACTION, by the Wachovia National Bank of Winston, N. C., against H. B. Ireland and A. S. Ireland his wife, heard by Judge *E. W. Timberlake,* at Fall Term, 1900, of DAVIE Superior Court.   From an order overruling an exception to the allotment of a homestead to A. S. Ireland, the plaintiff appealed.

*Jones & Patterson,* for plaintiff.
*A. H. Eller,* for defendants.

MONTGOMERY, J.   At the January Term, 1898, of the Superior Court of Forsyth County, the plaintiff recovered a judgment against the defendants for the sum of $5,000, with interest and costs.   The action was founded on certain promissory notes (renewals) executed by the defendants, H. B. Ireland and his wife, A. S. Ireland, and at the time of the execution of the original notes the defendants executed a paper-writing which was intended to charge and bind certain real estate of the *feme* defendant, mentioned in the

writing. That part of the instrument which recites the charging of the separate estate of the *feme* defendant is in the following words: "And, whereas, the said H. D. Ireland and his wife, A. S. Ireland, have executed and delivered said notes, and the said A. S. Ireland has indorsed the said notes, with good faith, and with full intention to pay the same according to the terms thereof; and whereas, the said H. B. Ireland desires to give his written consent to the signing and indorsing the said notes by his said wife, A. S. Ireland; and whereas, the said A. S. Ireland desires to bind her separate estate for the payment of her aforesaid obligation, and to mention specifically the separate estate so bound and charged by her: Now, therefore, the said H. B. Ireland for himself, does hereby ratify and confirm and give his written consent to the signing and execution and delivery and indorsement of the aforesaid obligations, and any and all renewals of the same, by his said wife, A. S. Ireland, and also gives his written consent to the execution of this paper-writing by his said wife, A. S. Ireland, and the said A. S. Ireland, for herself, and by the written consent of her husband, does hereby charge and specifically bind her following separate estate for the payment of all her aforesaid obligations, and any and all renewals thereof." The judgment declared the instrument above referred to, to be a charge on the separate real estate of the *feme* defendant, binding said real estate to the payment of the indebtedness upon which the judgment was rendered. It was further adjudged that the real estate was subject to execution after the property of H. B. Ireland, the husband, subject to execution, should be first exhausted. It was further adjudged, "the plaintiff consenting, that the defendant A. S. Ireland is entitled to her homestead in the said separate estate, as the same may be properly laid off

and allotted to her under an execution issued on the judgment herein rendered." An appeal was taken from this judgment by the defendants. At the February Term, 1898, of the Supreme Court (122 N. C., 571), it was decided that the instrument above referred to constituted a charge upon the real estate mentioned therein; but error was found in the judgment because it embraced a certain amount which the defendants in their answer had alleged to be usurious, and which defense the Court below refused to hear. At the February Term, 1900, of the Superior Court, $900 of the indebtedness was abated, "without any admission that the plea of usury contained in the answer of H. B. Ireland is just and true, and then judgment was rendered for the balance, which was declared to be a charge and lien on the land of the *feme* defendant by virtue of the deed and covenant in writing mentioned in the complaint, and that the land was subject to be sold under execution for the payment and satisfaction of the indebtedness upon which the judgment was rendered, and for the payment of the costs of the action. The judgment was docketed in Davie County, where the lands are situated, and execution was issued from Forsyth Superior Court; the execution reciting the lien and charge upon the land. The sheriff, finding no property of the defendant H. B. Ireland, subject to execution, had appraisers to lay off to the defendant A. S. Ireland her homestead. The plaintiff then filed an exception to the allotment of the homestead, alleging that she was not entitled to. it, for the reason that the paper-writing referred to constituted a lien and charge in favor of the plaintiff superior to the right of the defendant's claim for a homestead. At the Fall Term, 1900, of the Superior Court of Davie County, the exception filed by the plaintiff to the allotment of Mrs. Ireland's homestead, was overruled, and the plaintiff appealed.

The question for determination is this: Does the paper-writing transfer the title to the land described in the complaint, to the plaintiff? If it does, then the instrument is a security by way of mortgage, and, the private examination of the wife having been taken, and the instrument registered, her homestead and dower rights are subordinated to the lien created by the paper-writing, and the plaintiff's exception should not have been overruled. But in vain will be the search for any words of conveyancing in the instrument. "Charge" and "bind" are the words used. They mean no more in the writing referred to than they would have meant in a simple promissory note which might have been signed by the *feme* defendant for the purpose of charging her separate estate. The statute (sec. 1826 of The Code), does not use the word "charge" in reference to a married woman's making a contract to affect her real or personal estate, but it only requires her promise to that effect to be made with the written consent of her husband. The word "charge" is one used in judicial construction, and, when used in connection with a married woman's property and her attempt to affect it by contract, simply means that the property is made liable for her debts under execution, as if she were a *feme sole*. It does not mean, where she has contracted, otherwise than by way of mortgage or deed of trust, with the written consent of her husband, in a manner to affect her separate estate, that a lien which prevents the free transfer of the property afterwards and before judgment is created on her property. She could still convey her property, or any part of it, by deed, her husband joining with her. The agreement of the plaintiff and the defendants, contained in the paper-writing, simply enables the *feme* defendant to make a contract as if she were *feme sole,* and thereby to place her property on the footing of any other debtor, and

127——16

make it liable to be sold under execution for the satisfaction
of the debt. It follows, therefore, that as there was no lien
or charge upon the real estate in the nature of a mortgage
lien, and as the debt is a simple one, enforceable by execution
against the married woman's property, simply because sec.
1826 of The Code has been complied with, and her sepa-
rate estate thereby made liable, the *feme* defendant was en-
titled to her homestead in her real estate which was charged
for the payment of the debt. In *Flaum v. Wallace,* 103
N. C., 296, where a debt was adjudged to be a charge on
the separate personal estate of the *feme* defendant, it was
decided that she could claim the same exemption from execu-
tion as she would have been entitled to if she had been a
*feme sole.* The exemption secured to resident debtors by
the Constitution is paramount to any charge, except by mort-
gage or deed of trust, to which the separate estate of a mar-
ried woman becomes affected by reason of her promise to pay
a debt out of her separate estate with the written consent of
her husband. In *Bailey v. Barron,* 112 N. C., 54, it was
held, that the same principle would apply to her right of
homestead in her real estate, "unless [as the Court says]
it appears from the complaint, that she has, by a proper
deed, debarred herself from claiming a homestead out of the
lands described, or a judgment has been entered against her
which estops her from asserting such claim." We have seen
that the paper-writing in this case is not a mortgage, the
title to the real estate never having been passed to the plain-
tiff. The judgment first alluded to herein, allowed her the
homestead, by consent of the plaintiff, and the second judg-
ment (not appealed from), properly construed, means that
the charge and the lien referred to therein, must be under-
stood to be a charge and a lien subordinate to the *feme* de-
fendant's homestead exemption, and that the sheriff, before

levying the execution on the *feme* defendant's land, should allot to her her homestead exemption therein.    In the case of *Bailey v. Barron, supra,* the *feme* defendant expressly charged the payment of her note upon her separate estate, the consideration being for the benefit of her separate estate; and her husband consented in writing to the execution of the note, and for her to "bind her separate estate for the payment of the same."

There was no error in his Honor's overruling the plaintiff's exception to the allotment of the homestead.    His Honor further refused to appoint a receiver to take charge of the land described in the complaint.    Looking at the notice of motion to have a receiver appointed and at the affidavits, we see no error in the refusal of his Honor to grant the motion.

No error.