HARVEY v. JOHNSON.

(Filed November 10, 1903.)

1. HUSBAND AND WIFE—*Jurisdiction—Justice of the Peace—Superior Court—Negotiable Instruments.*

The superior court has no jurisdiction of an action on a note for $275; but on which the balance was less than $200.

2. HUSBAND AND WIFE—*Parties—Negotiable Instruments—The Code, sec. 178.*

In an action on a note seeking to charge her personal estate, the wife and husband must be joined as parties defendant.

3. HUSBAND AND WIFE—*Parties—Judgments—The Code, sec. 178.*

No judgment can be rendered against a husband who is joined with his wife in an action under The Code, sec. 178.

4. HUSBAND AND WIFE—*Negotiable Instruments—Separate Property of Wife—The Code, secs. 1828, 1831, 1832, 1836.*

A note signed by the husband and wife, binding her separate estate for the payment of the debt, the amount therein having been advanced for the benefit of her separate estate, is sufficient to bind her separate personal estate.

5. HUSBAND AND WIFE—*Exemptions—Judgments—Executions—The Code, sec. 443.*

In an action on a note to charge the separate estate of a married woman, she cannot set up her personal property exemptions against the action, but may claim the same upon issuance of execution.

6. HUSBAND AND WIFE—*Separate Property of Married Women—Exemptions—Acts 1891, ch. 91.*

> Acts 1891, ch. 91, requiring the private examination of a married woman to a chattel mortgage on household and kitchen furniture, does not apply to a note signed by husband and wife binding her separate personal estate.

7. HUSBAND AND WIFE—*Separate Estate of Married Women—Superior Court—Jurisdiction.*

> The superior court has jurisdiction of an action seeking to charge the separate estate of the wife, though the note sued on is less than $200.

8. HUSBAND AND WIFE—*Negotiable Instruments—Separate Estate of Married Women.*

> A note signed by husband and wife without a privy examination of the wife cannot be enforced against her separate real estate.

CLARK, C. J., dissenting in part.

ACTION by Harvey, Blair & Company against J. A. Johnson, heard by Judge *George H. Brown,* at February Term, 1902, of the Superior Court of WARREN County. From a judgment for the defendants the plaintiff appealed.

*Pittman & Kerr,* for the plaintiff.
*B. G. Green,* for the defendants.

WALKER, J. This action was brought in the Superior Court upon a note of which the following is a copy:

$275.00.          WARRENTON, N. C., Dec. 14, 1899.

On demand we or either of us promise to pay to Harvey, Blair & Co., with interest from date, at the rate of six per cent. per annum, the full and just sum of two hundred and seventy-five dollars for value received. And Ella B. Johnson, one of the principals in this note, binds her own separate estate for the payment of this note, the aforesaid two hundred

and seventy-five dollars having been advanced by aforesaid
creditors for the benefit of her said estate.

> S. B. JOHNSON,     (Seal.)
>
> J. A. JOHNSON, $\overset{his}{\underset{mark.}{X}}$ (Seal.)
>
> ELLA B. JOHNSON, (Seal.)

The plaintiff alleges that at the time the action was com-
menced the sum of $170.63 was due on the note and that the
*feme* defendant Ella B. Johnson was at said time seized and
possessed of a house and lot in the town of Warrenton, and
also owned household and kitchen furniture which is worth
$350.

The defendants S. B. and J. A. Johnson answered and ad-
mitted that they owed the balance alleged to be due on the
note, but averred that the Court had no jurisdiction of the
action upon the contract, as the amount alleged was less than
two hundred dollars.     The *feme* defendant answered and
alleged that false representations were made in order to induce
her to sign the note.     She also avers that the lot in Warrenton
is worth less than $1,000, and she denies her liability upon
the note.

The cause came on for trial, and upon motion of the de-
fendants to dismiss the action on the pleadings the Court dis-
missed the same upon the following grounds:

1. Because it does not appear that the *feme* defendant exe-
cuted in due form a sufficient conveyance charging her sepa-
rate estate.

2. That no consideration inured to the benefit of the sepa-
rate estate of Ella B. Johnson, and she had no capacity to
make the said contract.

3. That it appears from the complaint that her separate
personal estate does not exceed the personal exemption of five
hundred dollars allowed by law.

4. That as to the other defendants, the sum demanded is under two hundred dollars, exclusive of interest.

The judgment of the Court below was right as to the defendants S. B. and J. A. Johnson. They could not be sued in the Superior Court on a note the balance due upon which was less than two hundred dollars. It was proper to join J. A. Johnson with his wife as a defendant in this action, by which it was sought to subject her separate estate to the payment of the note, but he is only required to be a party for the protection of the interests of his wife, and no judgment could be rendered against him. The Code, sec. 178; *Nicholson v. Cox,* 83 N. C., 48; *Vick v. Pope,* 81 N. C., 22. We think, though, that the Court erred in dismissing the action as to the defendant Ella B. Johnson. The grounds upon which the action was dismissed as to her are not tenable. It appears that she executed the note with the written consent of her husband, and expressly charged her separate estate with its payment, and it further appears on the face of the note that the consideration was money advanced for the benefit of her separate estate. This would seem to be quite sufficient to make her liable to the plaintiff through a charge upon her separate personal estate, at least. *Flaum v. Wallace,* 103 N. C., 296; *Farthing v. Shields,* 106 N. C., 289; *Bailey v. Barron,* 112 N. C., 54; *Weathers v. Borders,* 124 N. C., 610.

The remaining contention of the defendant that, as it appears the separate personal estate of Mrs. Johnson does not exceed the exemption of $500 allowed her by law, she is therefore not liable to the plaintiff, cannot be sustained. The fact that the person property is of less value than five hundred dollars does not affect the jurisdiction or power of the Court to declare that it shall be charged with the payment of the obligation she has assumed. The law, by so charging her separate personal estate with the payment of this debt, does not deprive her of her personal property exemption. The judgment

against her will be enforced just as a judgment against a person *sui juris* would be, that is, by execution, but with this exception, that the law requires the execution to be levied only on her separate estate. The Code, sec. 443, provides that "an execution may issue against a married woman, and it shall direct the levy and collection of the amount of the judgment against her from her separate property, and not otherwise." When the sheriff receives an execution against a married woman, directing him to levy the same and collect the money due upon the judgment out of her separate estate, it is his duty to set apart and allot the exemption of the defendant, just as he is required to do in other cases. *Bailey v. Barron, supra; Bank v. Ireland,* 127 N. C., 238.

We have not overlooked the fact that the personal property of which she is said to be possessed is household and kitchen furniture. Chapter 91 of the Acts of 1891, p. 89, provides that whenever household and kitchen furniture is conveyed by chattel mortgage or otherwise, as allowed by law in this State, the privy examination of any woman interested in it shall be taken. This Court has construed that act as applying only to chattel mortgages and conveyances of a like kind which create liens upon the property. *Kelly v. Fleming,* 113 N. C., 133. It has no application to a case like the one now under consideration. In *Farthing v. Shields, supra,* the Court said that the reason which greatly influenced the Court to decide in *Flaum v. Wallace* that the wife could charge her separate personal estate with the mere written consent of her husband was that she could convey or transfer her personal property with his written consent, and therefore she should be allowed to charge it, while in the case of real property she could not convey it without privy examination, and therefore she should not be permitted to charge it unless it is done in the same way. Under the act of 1891 she is not forbidden to convey household and kitchen furniture absolutely, though she

cannot mortgage it or convey it so as to create a lien upon it without privy examination. The reason, therefore, for forbidding her to charge her land with the payment of her debts, either expressly or by implication arising out of the nature of the particular contract, does not apply to this case.

It is suggested that while the *feme* defendant is liable on the contract she is so liable as if she were a *feme sole* and not only by way of charge upon her separate estate, and that as the amount sued for is under two hundred dollars the action should have been brought before a justice of the peace, and the Superior Court therefore had no jurisdiction. We cannot yield to this suggestion. A married woman is not liable on her contract as if she was not under coverture except in cases provided in sections 1828, 1831, 1832 and 1836 of The Code. She is not liable on her contract at all, as we will see hereafter. This Court has held in a long and unbroken line of decisions that she is incapable of making a contract of any sort, and any attempt of hers to do so is not simply voidable, but absolutely void. If, however, she possesses separate property, the Court in the exercise of its equitable jurisdiction will so far recognize her agreement as to make it a charge thereon. But even in that case and in that jurisdiction her contract has no force whatever as a personal obligation or undertaking on her part. *Dougherty v. Sprinkle, supra; Pippen v. Wesson,* 74 N. C., 437. If a married woman borrows the sum of one hundred dollars and gives her bond for the same she is no more liable upon the bond than she was at common law. *Huntley v. Whitener,* 77 N. C., 392. A *feme covert* is at law incapable of making any executory contract whatever; she cannot make any legal contract, that is, one which will impose a personal obligation, even with the written consent of her husband, nor even if the contract is for her benefit and advantage. *Flaum v. Wallace, supra; Farthing v. Shields, supra.* The liability upon the agreement of a *feme covert* being therefore a mat-

ter of purely equitable cognizance, it must be enforced by an
action in a court having jurisdiction to administer equity
affirmatively, and not in the court of a justice of the peace,
where there is no such equitable jurisdiction. *Holden v.
Warren,* 118 N. C., 326. The legal effect of a married wo-
man's engagement, therefore, is not like that of a person *sui
juris.* It only creates a right in equity in behalf of the person
with whom the agreement is made to have the same enforced
against her separate estate, and she can never be liable to a
personal judgment for its satisfaction.

It is claimed that these principles have been modified by
the decision of this Court in *Neville v. Pope,* 95 N. C., 346,
and other like cases. In order to show that this cannot be
so it is only necessary to say that in the case cited the defend-
ant made no defence and judgment by default was entered,
so that it did not appear to the Court at the time of the
judgment that she was a married woman, and the Court pro-
ceeded upon the assumption, as it had a right to do, that she
was not, but was personally liable for the debt. The Court
clearly intimated, though, that if she had entered the plea
of coverture she would have been successful in the suit. Nor
do we think that chapter 617 of the Acts of 1901, as con-
strued by this Court in *Finger v. Hunter,* 130 N. C., 532,
has changed this law in any respect. It is provided by that
act merely that a married woman shall be liable for repairs
and improvements put upon her property with her consent or
procurement, and that in such a case she shall be deemed to
have contracted for the same. The act of 1901 is an amend-
ment to section 1781 of The Code, which subjects the property
upon which the repairs or improvements are made to a lien.
This brings the case directly within the reason for the decis-
ion in *Smaw v. Cohen,* 95 N. C., 85. In that case the juris-
diction of the justice was sustained by reason of the express
requirement of the statute that a suit against a person to

enforce such a lien, when the amount is less than two hundred dollars, shall be brought in a justice's court. The case of *Finger v. Hunter,* therefore, does not vary the general principle in regard to the enforcement of the agreements of married women, which we consider to be so well established by the decisions of this Court that it should not be changed except by legislative enactment. It is our duty to construe or expound the law and not to make it. We must ascertain what it is and not what it should be. The latter function belongs only to the law-making power.

It would seem hardly necessary to refer to the class of cases in which the Court has sustained the right to enforce the contract of a married woman, who is a free-trader under sections 1827, 1828, 1831 and 1832 of The Code, or a contract made by virtue of any other statutory provision authorizing her to contract as if she were *sui juris.* In such a case it is too clear, even for argument, that she is personally liable just as if she were not married or as if she had contracted as a *feme sole.* Her obligation is a legal one and not a mere equitable charge upon her separate property, and must be enforced in the court having jurisdiction of such cases, which will be determined by the amount involved.

The case of *Dougherty v. Sprinkle, supra,* as the transcript in that case will show, was brought not to enforce a mechanic's lien or any kind of lien, but to recover upon an implied promise to pay the reasonable value of work and labor done and material furnished. It was in the nature of an action of *assumpsit.* The principle laid down in that case was no more impaired by the act of 1901, chapter 617, as construed in *Finger v. Hunter,* than it was affected by the decision in *Smaw v. Cohen.* The principle of *Dougherty v. Sprinkle* remains to this day just as it was when the case was decided in 1888, notwithstanding the case of *Smaw v. Cohen,* in regard to the enforcement of liens and other cases relating

to the contracts of married women as free-traders. This Court has maintained and applied the doctrine as set forth in *Dougherty v. Sprinkle* in all its original force and efficacy. So late as 1895 it was affirmed by a unanimous decision in the case of *Wilcox v. Arnold,* 116 N. C., 708, the Court saying: "It (the contract) purports neither to charge her separate estate nor to be for her benefit, and if it had, the court of a justice of the peace would have had no jurisdiction in the matter," citing *Dougherty v. Sprinkle.* In the case of *Wilcox v. Arnold* the doctrine of this Court in such cases is fully declared, and *Pippen v. Wesson, Flaum v. Wallace* and *Farthing v. Shields* are cited with approval. In *Patterson v. Gooch,* 108 N. C., 503, this Court said: "The plaintiff contends that the statement set out in the record is, in effect, a written consent on the part of the husband, and the nature of the contract being such as necessarily to imply a charge upon the wife's personal estate, that the *feme* defendant is liable by virtue of The Code, sec. 1826. We need not decide how that may be, for if we concede that it is so, the remedy cannot be sought in a court of a justice of the peace." To the same effect is *Bank v. Howell,* 118 N. C., 271.

We have seen that no change has been made by legislation in the law as repeatedly stated by this Court, and it may safely be inferred that the Legislature has accepted our construction of the statute as the proper one and has acquiesced in it as being in accordance with what the law should be. It having been decided, as we have shown, and there being no expression to the contrary, that a married woman's engagement can only be enforced in equity against her separate estate, it necessarily follows that the jurisdiction in all such cases, except when otherwise expressly provided, must be in the Superior Court, without regard to the amount in controversy.

The payment of the note cannot be enforced in this case against the real property of the *feme* defendant, as there was

no privy examination. As to this part of the case the trial Judge was right. *Farthing v. Shields, supra.*

We hold, in conclusion, that the defendant Mrs. Johnson has sufficiently charged her separate personal estate with the payment of the note sued on, and that the Superior Court had the jurisdiction to enforce the charge. In this respect there was error in the judgment below. The judgment will be set aside and a new trial awarded.

Error.

CLARK, C. J., *dissenting in part.* I concur with the opinion that the bond sued on is a valid indebtedness against the *feme* defendant, and that the fact that her personal property may not exceed $500 cannot be set up as a defense, because the judgment against her will be enforced by an execution just as a judgment against any one else, and the personal property exemption must be claimed by her against the execution and not as a defense to the action. A married woman's contract no more creates a lien on her property, unless it includes a mortgage or a conveyance, than does a contract by any one else. *Bates v. Sultan,* 117 N. C., 100. The Code, sec. 1826, permits a married woman to make any contract for the payment of which her real or personal property shall be liable if made *with* the written consent of her husband, except in three instances there stated, in which she may contract *without* his consent. Section 1828 prescribes a method by which she can contract in all cases without her husband's assent, and section 1832 prescribes what conduct of her husband shall have the effect to authorize her to contract in all cases without his assent. *Cromer v. Marsha,* 122 N. C., 563 ; *Levi v. Marsha,* 122 N. C., 565, in which cases judgment before a justice of the peace was sustained. Here the contract is for money borrowed with the assent of the husband. The action is for a plain judgment to recover $170.63 and nothing more. Always

and everywhere *semper ubique,* an action on contract to re-
cover money loaned is at law.   The Constitution says all
actions on contract, where the sum is less than $200, shall be
brought before a justice of the peace, and abolishes the dis-
tinction between law and equity as a question of jurisdiction.
In *Dougherty v. Sprinkle,* 88 N. C., 300, where the plaintiff
sued a married woman to recover less than $200 for work
done on her premises, it is true the Court held that the jus-
tice did not have jurisdiction, but the General Assembly has
since enacted (1901, ch. 617) that when a building is built
or repaired on a married woman's land "with her consent or
procurement   *   *   *   she shall be deemed to have *con-
tracted* for such improvements."   The statute making it a
contract, whether express or implied, this Court held that the
married woman (if the amount was under $200) must be
sued before a justice of the peace.   *Finger v. Hunter,* 130
N. C., 532.   If the case of *Dougherty v. Sprinkle* were now
before the Court, by virtue of the act of 1901 and the last de-
cision of this Court, it would necessarily be held that Dough-
erty was entitled to his judgment before a justice of the
peace, for the facts in *Finger v. Hunter* are exactly the same.
With the statutory repeal of *Dougherty v. Sprinkle,* all cases
built upon it disappear with it.   The act was passed to change
the law.   The Legislature could do no more than it has done.
If it had enacted that in such case a justice of the peace
should (or should not) have jurisdiction, it could not confer
or refuse jurisdiction, but when the Legislature said that a
married woman could make such "contract" the Constitution
fixed the jurisdiction in the justice of the peace when the
amount is less than $200.   It is so held in *Finger v. Hunter,*
*supra.*

If a married woman is liable to a judgment less than $200
before a justice of the peace on an implied contract, under
the act of 1901, the jurisdiction is necessarily the same upon

an express contract which is made as authorized by The Code, section 1826. *Dougherty v. Sprinkle* lays down the broad principle, top of page 302; "At law a *feme covert* is incapable of making any contract of any sort." That is the key to it. But the Legislature authorized married women to make contracts (The Code, sec. 1828), and judgments on such contracts against them before a justice of the peace have always been held valid. It authorized contracts by them under section 1832, and it has always been held that justices of the peace could give judgments against them upon contracts thereunder, if for less than $200. The act of 1901, ch. 617, validated contracts, express or implied, by married women for repairs or buildings on their land, and this Court held that in such judgment for less than $200 must be given by a justice of the peace. This contract is equally authorized by section 1826. *Dougherty v. Sprinkle* was wrong in its premises, for nothing in the Constitution prohibits the Legislature from authorizing married women to contract, and this Court has recommended that it confer such authority without restriction (*Bank v. Howell*, 118 N. C., 273), and the General Assembly *has* authorized married women to contract, sometimes requiring the husband's assent and sometimes not, but a contract authorized by statute is necessarily at law. Here there is no equity to assert. There is no lien to foreclose, but merely a valid contract (to pay money borrowed) binding on her. The Court so holds in this case. The money was loaned to her and she is the real debtor, as evidenced by her bond with her husband's written assent. If she were sued on an ante-nuptial contract for $170.63 (the amount in this case), the justice of the peace would have jurisdiction; *Neville v. Pope*, 95 N. C., 346; *Hodges v. Hill*, 105 N. C., 130; and even when part of the services or goods were obtained after marriage. *Beville v. Cox*, 107 N. C., 175; 11 L. R. A., 274. She can sue alone for tort; *Strother v. Rail-*

*road,* 123 N. C., 197; or for breach of contract; *Shular v. Milsaps,* 71 N. C., 297; and therefore can make an enforcible contract.

Here the contract, unlike that in *Dougherty v. Sprinkle,* is held valid by the Court. The statute (The Code, sec. 178) provides that a married woman may be sued. The Code, sec. 1826, authorizes her to make this contract, and it is held a valid contract. The Constitution says actions on contracts less than $200 are within the jurisdiction of a justice of the peace. The Constitution makes no exception. We have no right to create an exception. As *Daniel, J.,* well says: "Judges cannot be wiser than the law." Even if we could write such exception to the jurisdiction of justices of the peace into the Constitution, what benefit can accrue therefrom? Why not follow the Constitution?

In a less polite age the Judges held that a husband had a right to chastise his wife, and that while a single woman (if of age) was competent to manage her own business, she suddenly became incompetent and *non sui juris* upon marriage, and as suddenly resumed her intelligence again upon becoming a widow. The Constitution of 1868 did away with this inexplicable and unaccountable condition of things by expressly making married women *sui juris,* without any restriction on their property rights save requiring the husband's assent to conveyances by them. Some Judges, under the influence of preconceived ideas as to the universal incompetence of married women, failed to give effect to this ordinance of emancipation as to them, by reason of which, and some others subsequently, many decisions as to married women in this State are in conflict with each other and in flat contradiction to the Constitution. The resultant confusion is set out in *Vann v. Edwards,* 128 N. C., 431-434, in a summary of the decisons by Professor Mordecai in three pages of fine, closely-printed type. There is no better time to return to the plain

letter of the Constitution, which it is our duty to follow, than now. The old Judge-made law, that a husband had a right to chastise his wife, was reiterated by this Court again and again, till at last *Settle J.*, in *State v. Oliver*, 70 N. C., 60, exploded the fiction that the wife as to her person was assimilated to the condition of a child, *non sui juris*, and subject to chastisement as such, by saying, "the Courts have advanced from that barbarism." See 128 N. C., 428. In like manner the Constitution of 1868 repealed the former ruling of the Courts that as to her property rights a married woman was assimilated to the condition of a child, *non sui juris*, by providing as to her property she could "remain as if unmarried" save that as to her conveyances the assent of the husband should still be necessary.

In England and all her colonies and in nearly every State of this Union, by statute or constitutional provision, the emancipation of married women has been decreed, and in many instances even without the single restriction imposed by our Constitution. In this State alone have the decisions of the Courts failed to be in accord with such action of the law-making power. In this case the contract sued on having been held valid, the Constitution fixed the jurisdiction in the justice of the peace, and in my judgment this action brought in the Superior Court for the recovery of $170.63 was properly dismissed by the Judge below, though not for the reason he gave. The jurisdiction to recover upon this bond is held to be in the justice of the peace as to the co-obligors. There is nothing in the Constitution or statute which indicates that recovery upon a valid obligation of the *feme* defendant is not enforcible in the same jurisdiction. *Neville v. Pope* and *Finger v. Hunter, supra.* There is no reason that when a married woman borrows ten dollars for her own use she should be suable only in the Superior Court, with the increased costs and delay, while if the husband borrows $200, recovery can

be had before a justice of the peace.   He is a party defendant in both actions.

No statute, with the utmost research, has yet been found which authorizes or suggests the "charging" of a wife's property for her contracts.   As "it is our duty to construe or expound the law and not to make it," we should not continue a ruling which besides has been expressly overruled.   In *Brinkley v. Ballance,* 126 N. C., 396, the Court held (*Faircloth, C. J.,* alone dissenting) as follows: "An examination of the Constitution, Article X, section 6, and of the statute, The Code, section 1826, shows no foundation for the 'charging' of the wife's property, as laid down in some decisions of a former Court.   The Constitution requires only the written assent of the husband to 'conveyances,' and section 1826 requires only the written consent of the husband to contracts affecting the wife's 'real or personal' estate in certain cases, dispensing with it in others."

The Code, section 178, authorizes a married woman to be sued; Laws 1899, ch. 78, take her out of the class of those *non sui juris* (who are enumerated in ·The Code, sections 148 and 163, and nowhere else), and permits the running of the statute of limitations against her; and The Code, section 443, directs that execution issue against a married woman. The provision that it shall be levied only upon her separate property can have no effect other than to exempt what she holds *ex jure mariti, i. e.,* her contingent right of dower. There is nothing else to which the restriction could possibly apply.   As a married woman can by the Constitution use her property "as if unmarried," save that the husband's written consent is required to her "conveyances" only; as by The Code, sections 1826, 1828 and 1832, she can contract as if unmarried, except that in some cases, mentioned in section 1826, the husband's written consent is required (nothing more) ; as by The Code, section 178, she can sue without join-

MAKELY *v.* LEGION OF HONOR.

ing her husband and she can be sued without joining a next friend, and by section 443 execution can be levied on all the property she owns (with the same exemptions allowed men or *femes sole*); as further by Laws 1899, ch. 78, the statute of limitations runs against her as if unmarried, and by Laws 1901, ch. 617, she can be held liable in an action before a justice of the peace on an implied contract, it is difficult to see upon what principle she can be held a ward in equity and that the doctrine of "charging" her estate can be revived without there being now, or there having ever been at any time, a statute authorizing the doctrine of "charging," and after it has been overruled in *Brinkley v. Ballance, supra.*